1   David T. Barton #016848
    Benjamin J. Naylor #023968
2   **BURNSBARTON LLP**
    45 West Jefferson, 11th Floor
3   Phoenix, AZ 85003
    Phone: (602) 753-4500
4   david@burnsbarton.com
    ben@burnsbarton.com
5   *Attorneys for Defendant*

6   Michael R. Pruitt #011792
    Nathaniel J. Hill #028151
7   **JACKSON WHITE, P.C.**
    40 North Center Street, Suite 200
8   Mesa, AZ  85201
    Phone: (480) 464-1111
9   mpruitt@jacksonwhitelaw.com
    nhill@jacksonwhitelaw.com
10  *Attorneys for Plaintiffs*

11                  IN THE UNITED STATES DISTRICT COURT

12                     FOR THE DISTRICT OF ARIZONA

13

14  SAL CAREAGA, et. al.,                No. 2:15-CV-01282-PHX-GMS

15              Plaintiffs,

16      vs.                              **JOINT MOTION TO APPROVE**
                                         **SETTLEMENT AGREEMENT AND**
17  GODADDY.COM, LLC, a foreign limited  **STIPULATION OF DISMISSAL**
    liability company,
18
                Defendant.
19

20          Defendant GoDaddy.com, LLC ("GoDaddy") and Plaintiffs Amanda Baldwin,

21  Joshua Ross, Kerri Orndoff, Katherine Vega, Mitchell Jenkins, Ronald Pearl, Sal Carega,

22  Shelbie Garner, Josh Berry, Ian Schnack, Ian Kelman, Christina Allen, Dustin Mitchell

23  ("Plaintiffs"), jointly move this Court for an order approving their settlement agreement,

24  and dismissing their individual claims with prejudice.  The parties also seek an order

25  dismissing all claims on behalf of the proposed class without prejudice.

26          This Motion is supported by the following Memorandum of Points and Authorities,

27  the attached settlement agreement and Declarations, and the Court's entire record herein.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

Plaintiffs are former GoDaddy employees who held the positions of Web Builder, Account Manager and Project Leader within the three years preceding the filing of this lawsuit.  While working in those positions, Plaintiffs were responsible for various aspects of creating and designing websites for GoDaddy customers.   Plaintiffs allege that GoDaddy violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") by failing to pay them overtime wages for hours worked in excess of forty per workweek. Specifically, Plaintiffs argue that GoDaddy misclassified the positions of Web Builder, Account Manager and Project Leader as exempt from approximately December 2012 until September 2015.   Plaintiffs estimate they are owed approximately $429,451.57 in collective unpaid overtime during the period in which they were allegedly misclassified. Plaintiffs allege that GoDaddy acted willfully and in bad faith by classifying the Web Builder, Account Manager and Project Leader positions as exempt, and therefore argue that they are entitled to liquidated damages and a three-year statute of limitations, as well as an award of their attorneys' fees.

GoDaddy is an internet domain name registrar based in Scottsdale, Arizona. GoDaddy alleges that it properly classified the positions of Web Builder, Account Manager and Project Leader as exempt, based on the creative professional exemption. *See* 29 C.F.R. § 541.302.  GoDaddy further alleges that its decision to classify those positions as exempt was the result of a thorough and well-documented investigation of the job duties involved, and a careful legal analysis to ensure compliance with the FLSA. Because Plaintiffs were at all times properly classified, GoDaddy argues that Plaintiffs were properly compensated and are not due any overtime pay or attorneys' fees. Additionally, GoDaddy argues that it acted in good faith and had reasonable grounds for classifying these jobs as exempt, and therefore Plaintiffs would not be eligible for an

award of liquidated damages (or a three-year statute of limitations) even if they were misclassified, which GoDaddy contends they were not.

Plaintiffs filed this lawsuit on July 10, 2015 as a collective action under 29 U.S.C. § 216(b), but did not serve GoDaddy until approximately November 3, 2015. Plaintiffs signed their respective consents to join this action at various dates between July 2015 and January 2016. Plaintiffs have amended their complaint to add the names of all 13 individuals as named Plaintiffs. Plaintiffs have not moved to conditionally certify this lawsuit as a collective action. On March 28, 2016, the parties participated in a settlement conference before Magistrate Judge Duncan. During the settlement conference, the parties reached a compromise and Magistrate Judge Duncan read the principle terms of that compromise into the record. Magistrate Judge Duncan also questioned each party, individually, if they understood the terms of the settlement and agreed to settle. All parties affirmed they did understand the terms and agreed to the settlement.

The parties have subsequently memorialized all of the terms of their settlement in the Settlement Agreement and Release of Claims (the "Settlement Agreement") attached hereto as <u>Exhibit "A"</u>. All parties have signed the Settlement Agreement. The parties stipulate that they had a bona fide dispute and they are resolving this matter in order to avoid the time, expense and uncertainty of continued litigation. The parties attest to the fairness and reasonableness of their settlement and request that the Court approve the settlement and dismiss Plaintiffs' claims with prejudice, and the putative class claims without prejudice.

## II.   <u>LEGAL ANALYSIS</u>

### A.   The Settlement of Plaintiffs' Claims Should Be Approved.

Where a plaintiff brings an FLSA action, the parties must seek approval of the settlement agreement to ensure that it is enforceable and fair. *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901-PHX-LOA, 2013 WL 6228652, at *5 (Dec. 2, 2013) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)). "In reviewing the

fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Id.* at *6. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute . . . the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Luo v. Zynga Inc.*, No. 13-CV-00186 NC, 2014 WL 457742, at *2 (N.D. Cal. Jan. 31, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1355).

Here, there exists a bona fide dispute regarding whether Plaintiffs were properly classified as exempt employees, and thus whether Plaintiffs were eligible for overtime pay. GoDaddy argues that Plaintiffs were skilled professionals whose primary duties involved performing work that required invention, imagination, originality or talent in developing unique "custom" websites for GoDaddy's customers. From the Account Manager who worked with the customer to develop, capture and define the vision for the website, to the Project Leader who coordinated the project using imagination and originality, to the Web Builder who translated the vision for the website into computer pixels, GoDaddy argues that the members of its creative web development team fell squarely within the FLSA's creative professional exemption, and therefore no overtime is owed. *See* 29 C.F.R. § 541.302. Plaintiffs argue that their creativity was heavily restricted by the required use of templates and other limitations set by GoDaddy, and that GoDaddy's customers dictated what kind of website they were to build, which deprived Plaintiffs of the ability to exercise any imagination or originality in their work. All parties acknowledge that application of the creative professional exemption in the website design context is a relatively novel issue, and there is little legal precedent to guide a fact finder and resolve the parties' bona fide dispute as to whether website design and development employees properly fall within the creative professional exemption.

Next, in the event that Plaintiffs were misclassified as exempt creative professionals, there exists a bona fide dispute regarding how much overtime pay would be

owed to Plaintiffs, based on the parties' differing calculations of hours worked in excess of 40 per workweek.   To that end, Plaintiffs estimate that they would be owed approximately $429,451.57 in unpaid overtime, using a three-year statute of limitations, if they were misclassified as exempt.   GoDaddy estimates that Plaintiffs would be owed approximately $352,014.26 in unpaid overtime using the same three-year statute of limitations (assuming *arguendo*) if they were misclassified as exempt.   Both parties base their estimates on competing documentary evidence.   The parties have agreed to settle Plaintiffs' claims for the gross amount of $500,000.00, with $380,000.00 paid to Plaintiffs as wages, and $120,000.00 allocated to attorneys' fees and costs.   *See Fontes*, 2013 WL 6228652, at *5 (citing *Lynn's Foods*, 679 F.2d at 1352) ("FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions.").   In support of Plaintiffs' request for approval of attorneys' fees and costs, Plaintiffs have included as Exhibit "B", Declaration of Plaintiff's Counsel in Support of Settlement Agreement and Award of Attorneys' Fees and Costs, and as Exhibit "C", Declaration of Thomas Rogers in Support of Award of Attorneys' Fees and Costs.

There also exists a bona fide dispute regarding whether GoDaddy acted in good faith and had reasonable grounds for believing that its Web Builder, Account Manager and Project Leader positions were properly classified as exempt.   GoDaddy argues that its trained and qualified human resources and legal professionals evaluated the jobs at issue, discussed the job requirements and duties, and came to the reasoned conclusion that these jobs were exempt under the FLSA.   GoDaddy has provided emails supporting its position. Plaintiffs argue that the evidence presented by GoDaddy reflects only a cursory review of the job duties and positions at issue, resulting in an incorrect determination that they were exempt.   Thus, the parties disagree over whether GoDaddy can meet its burden of avoiding liquidated damages by establishing that: (1) "the act or omission giving rise to such action was in good faith," and that (2) "he had reasonable grounds for believing that

his act or omission was not a violation of the [FLSA]." *Peterson v. Snodgrass*, 683 F. Supp. 2d 1107, 1127 (D. Or. 2010) (citing 29 U.S.C. § 260).

Finally, there exists a bona fide dispute whether Plaintiffs could prove that Defendant GoDaddy engaged in a "willful" violation of the Act in order to avail themselves of the three year statute of limitations. 29 U.S.C. § 255(a) (providing a three-year statute of limitations for willful violations of the FLSA); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (a violation of the FLSA is willful if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].").

**B.      Dismissal of the Putative Class Claims is Proper.**

Although court approval is typically required of settlements made before a class is certified, "the court's duty to inquire into a settlement or dismissal differs because 'the dismissal is not *res judicata* against the absent class members and the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class.'"  *Luo v. Zynga Inc.*, 2014 WL 457742, at *3 (quoting *Diaz v. Trust Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989)).  The central purpose of this inquiry is to determine whether the proposed settlement and dismissal are collusive or prejudicial to absent putative class members.  *Id.*  "To determine whether pre-certification settlement or dismissal is appropriate, the district court should inquire into possible prejudice from (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests."  *Luo,* 2014 WL 457742, at *3 (internal quotations omitted).

First, it is improbable that any putative class members relied on Plaintiffs to protect their interests.  There has been almost no media coverage of this lawsuit.  A recent Google

search of "careaga + godaddy" generates only three applicable results.[1]   Two of those results are legal reporting websites, which merely provide access to the Court's docket (Justia and Law 360), and the other is an industry blog (Domain Name Wire), which reported on July 13, 2015 that the lawsuit had been filed days earlier.   No reader comments or follow up stories exist.   The lack of publicity makes it unlikely that similarly situated class members knew of the present lawsuit and relied on it to vindicate their rights.   Additionally, no notice was requested or sent to putative class members informing them of the opportunity to opt into this lawsuit.   Finally, no putative class members who planned to join the lawsuit have contacted counsel for Plaintiffs or GoDaddy, and none appeared at last week's settlement conference, notice of which was made public record.

Second, there is still adequate time for putative class members to file other actions. The period during which Plaintiffs claim they were misclassified runs from approximately December 2012 through September 2015.   Putative class members who were to file another action now would still have between 18 and 30 months of potential liability left on their statute of limitations (depending on whether the alleged violations, if proven, were found to be willful).   Accordingly, putative class members with active claims are not at risk of having their claims time-barred.

Third, Plaintiffs do not seek to dismiss the class claims in this lawsuit with prejudice.   Accordingly, there has been no settlement or concession of class interests because the rights and claims of the putative class members remain uncompromised.   *See Luo,* 2014 WL 457742, at \*4 ("Luo does not seek to dismiss the class claims with prejudice and, therefore, the rights or claims of the putative class members are not compromised.")

---

[1] This search was last performed on March 30, 2016.

**III.   CONCLUSION**

Based on the foregoing, the parties respectfully request an order from the Court approving their settlement agreement, dismissing Plaintiffs' individual claims with prejudice, and dismissing claims on behalf of the proposed class without prejudice.

RESPECTFULLY SUBMITTED this 4th day of April, 2016.

**BurnsBarton LLP**

By_____
                David T. Barton
                Benjamin J. Naylor
                *Attorneys for Defendant*

**Jackson White**

By_____
                Michael R. Pruitt
                *Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following if CM/ECF registrants, and mailed a copy of same to any non-registrants this 4th day of April, 2016.

Michael R. Pruitt
Nathaniel J. Hill
JACKSON WHITE
40 North Center Street, Suite 200
Mesa, Arizona 85201
Attorneys for Plaintiffs

By: s/ Carol Aparicio _____

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS (the "Agreement") is entered into by and between Amanda Baldwin, Joshua Ross, Kerri Orndoff, Katherine Vega, Mitchell Jenkins, Ronald Pearl, Sal Carega, Shelbie Garner, Josh Berry, Ian Schnack, Ian Kelman, Christina Allen, Dustin Mitchell (collectively, "Employees") and GoDaddy.com, LLC ("GoDaddy" or "Company"). For the purposes of this Agreement, GoDaddy and Employees are collectively referred to as the "Parties". This Agreement is presented to Employees on April 1, 2016.

## RECITALS

WHEREAS Employees are former GoDaddy employees and the named Plaintiffs in the lawsuit styled, *Careaga, et al. v. GoDaddy.com, LLC*, No. 2:15-CV-01282-PHX-GMS (the "Lawsuit") pending before the Honorable G. Murray Snow in the United States District Court for the District of Arizona (the "Court").

WHEREAS the Parties intend to fully, completely, and finally resolve and settle all claims that Employees may have against GoDaddy, including those in the Lawsuit, according to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the above recitals and the mutual promises, covenants, obligations, and understandings set forth below, the Parties hereby agree as follows:

1. **Settlement Payment and Attorneys' Fees**. In exchange for Employees' promises to abide by all the terms and conditions of this Agreement, GoDaddy will pay each of the Employees the gross amount listed next to his or her name on <u>Schedule A</u>, attached hereto (the "Settlement Payment"). The Settlement Payment will be paid within 14 days following the date the Court enters an order approving the Parties' settlement and approving this Settlement Agreement including each provision herein, and will be paid as W-2 wages less all required withholdings and deductions. Within the same time period GoDaddy will pay to Jackson White, P.C. the amount listed on <u>Schedule A</u> as attorneys' fees pursuant to a Form 1099 to Jackson White, P.C..

2. **Payment of Salary and Receipt of All Benefits.** Employees acknowledge and represent that, after Employees receive the Settlement Payment described above, GoDaddy will have paid all benefits and compensation due to Employees through the date Employees sign this Agreement.

3. **Court Approval Required**. The parties acknowledge and agree that in order for this Agreement to become effective, it must be fully approved by the Court in the Lawsuit, pursuant to the Parties' Joint Motion to Approve Settlement Agreement and Stipulation of Dismissal. If the Court refuses to fully approve the parties' settlement and/or this Agreement (including all of its terms), this Agreement is rendered null and void.

4.    **Release**.  In exchange for the Settlement Payment, Employees release, waive and forever discharge GoDaddy and its directors, officers, employees, attorneys and related entities (the "Released Parties") from any and all claims or causes of action, whether known or unknown, including Employees' claims for wages and overtime under the Fair Labor Standards Act, as alleged in the Lawsuit.  Employees agree to take all steps necessary to effect the dismissal of the Lawsuit, including dismissal of Employees' claims with prejudice, and dismissal of the proposed class claims without prejudice.

5.    **Acknowledgments**.  Employees acknowledge that each of the following statements are true and accurate:

   a.  Employees would not have been entitled to receive the Settlement Payment set forth in Section 1 above had Employees rejected this Agreement;

   b.  Employees have carefully read this entire Agreement and understand all the terms of this Agreement;

   c.  Employees have not relied on any oral or written statements that are not set forth in this Agreement in determining whether to enter into this Agreement;

   d.  Employees will receive adequate consideration in return for the promises made in this Agreement; and

   e.  Employees have freely, voluntarily, and knowingly entered into this Agreement.

6.    **Non-Disclosure**.  Employees agree to keep the existence and terms of this Agreement, and the negotiations leading up to this Agreement, confidential and to make no disclosure of the terms of the Parties' settlement except to immediate family members, as required by law, or as necessary to obtain legal or financial advice.  If asked, Employees will say only that the matter has been settled and that the settlement is confidential.

7.    **Prior Agreements**.   The Parties acknowledge that they have carefully read this Agreement, have voluntarily entered into it, and understand its contents and its binding legal effect.  The Parties further acknowledge and agree that this Agreement represents the entire agreement between them and supersedes any and all other oral or written agreements that may exist between them, except for, if applicable: (a) Employees' Non-Compete Agreements with GoDaddy which will remain in full force and effect, and (b) Employees' continuing confidentiality obligations to GoDaddy as outlined in the company handbook and other policies.

8.    **Future Employment**.  Employees agree not to apply for or accept any position with GoDaddy or its affiliates now or in the future.

9.    **Non-Liability**.  This Agreement is not an admission or evidence of fault, wrongdoing or liability by GoDaddy, nor should it be construed as such, but instead reflects the desire of the Parties to resolve the Released Claims fairly and amicably.

10.    **Governing Law and Forum**.  This Agreement shall be governed by and interpreted in accordance with the substantive law of the State of Arizona as it governs transactions occurring wholly within Arizona.  Any action or dispute arising out of, or in any way related to, this Agreement, or the interpretation and/or application of this Agreement, must be brought in Maricopa County, Arizona.

11.    **Remedies for Breach**.  A breach of any provision of this Agreement may give rise to a legal action. If one or more Employees breach any provision of this Agreement, in addition to any other available remedies, GoDaddy may recover all amounts paid to the breaching Employee(s) under this Agreement.  The prevailing party in any action based on a breach of this Agreement will be entitled to recover its costs and actual attorneys' fees incurred in any litigation relating to or arising out of this Agreement.

12.    **Counterparts**.  This Agreement may be executed by the Parties in one or more counterparts, including faxed, scanned or emailed copies.  All such fully-executed counterparts shall be treated as originals of this Agreement.

**Please read this Agreement carefully, it contains a RELEASE of all known and unknown claims.**

**Agreed and accepted:**

**GoDaddy.com, LLC**

By: _Nima Kelly_____
       0A94034D6FC74B2...

Its:  Nima Jacobs Kelly General Counsel, Legal

Date  04-Apr-2016_____

**Amanda Baldwin**

_____
Sign

_____
Print Name

Date:_____


**Joshua Ross**

_____
Sign

_____
Print Name

Date_____

**Kerri Orndoff**

_____
Sign

_____
Print Name

Date_____

Amanda Collins

4 - 1 - 2016

11.   **Remedies for Breach**.  A breach of any provision of this Agreement may give rise to a legal action. If one or more Employees breach any provision of this Agreement, in addition to any other available remedies, GoDaddy may recover all amounts paid to the breaching Employee(s) under this Agreement.  The prevailing party in any action based on a breach of this Agreement will be entitled to recover its costs and actual attorneys' fees incurred in any litigation relating to or arising out of this Agreement.

12.   **Counterparts**.   This Agreement may be executed by the Parties in one or more counterparts, including faxed, scanned or emailed copies.  All such fully-executed counterparts shall be treated as originals of this Agreement.

**Please read this Agreement carefully, it contains a RELEASE of all known and unknown claims.**

**Agreed and accepted:**

**GoDaddy.com, LLC**

By: _____

Its: _____

Date_____

**Amanda Baldwin**

_____
Sign

_____
Print Name

Date:_____

**Joshua Ross**

*Joshua D Ross*
Sign

*Joshua D Ross*
Print Name

Date *April 1, 2016*

**Kerri Orndoff**

_____
Sign

_____
Print Name

Date_____

Page 3 of 6

11.     **Remedies for Breach**   A breach of any provision of this Agreement may give rise to a legal action. If one or more Employees breach any provision of this Agreement, in addition to any other available remedies, GoDaddy may recover all amounts paid to the breaching Employee(s) under this Agreement. The prevailing party in any action based on a breach of this Agreement will be entitled to recover its costs and actual attorneys' fees incurred in any litigation relating to or arising out of this Agreement.

12.     **Counterparts**   This Agreement may be executed by the Parties in one or more counterparts, including faxed, scanned or emailed copies. All such fully-executed counterparts shall be treated as originals of this Agreement.

**Please read this Agreement carefully, it contains a RELEASE of all known and unknown claims.**

Agreed and accepted:

GoDaddy.com, LLC                                Amanda Baldwin

By: _____                    _____
                                                Sign

Its _____                    _____
                                                Print Name

Date _____                   Date _____


Joshua Ross                                     **Kerri Orndoff**

_____                         K. Orndoff
Sign                                            **Sign**

_____                         Kerri Orndoff
Print Name                                      Print Name

Date _____                    Date  4-1-16

**Katherine Vega**

_KAT Vega_
Sign

  Katherine A. Vega
Print Name

Date  04/01/16


**Mitchell Jenkins**

_____
Sign

_____
Print Name

Date_____


**Ronald Pearl**

_____
Sign

_____
Print Name

Date_____


**Sal Carega**

_____
Sign

_____
Print Name

Date_____


**Shelbie Garner**

_____
Sign

_____
Print Name

Date_____


**Josh Berry**

_____
Sign

_____
Print Name

Date_____

**Katherine Vega**

Sign _____

Print Name _____

Date _____

**Mitchell Jenkins**

Sign _____

Print Name  Mitchell Jenkins

Date  4-1-2016

**Ronald Pearl**

Sign _____

Print Name _____

Date _____

**Sal Carega**

Sign _____

Print Name _____

Date _____

**Shelbie Garner**

Sign _____

Print Name _____

Date _____

**Josh Berry**

Sign _____

Print Name _____

Date _____

Page 4 of 6

**Katherine Vega**

_____
Sign

_____
Print Name

Date _____

**Mitchell Jenkins**

_____
Sign

_____
Print Name

Date _____

**Ronald Pearl**

_____
Sign

Ronald, J Pearl
_____
Print Name

Date _4-1-16_____

**Sal Carega**

_____
Sign

_____
Print Name

Date _____

**Shelbie Garner**

_____
Sign

_____
Print Name

Date _____

**Josh Berry**

_____
Sign

_____
Print Name

Date _____

Page 4 of 6



**Katherine Vega**

_____
Sign

_____
Print Name

Date_____

**Mitchell Jenkins**

_____
Sign

_____
Print Name

Date_____

**Ronald Pearl**

_____
Sign

_____
Print Name

Date_____

**Sal Carega**

_____
Sign

_____
Print Name

Date_____

**Shelbie Garner**

_____
Sign

_____
Print Name

Date_____

**Josh Berry**

_____
Sign

JOSHUA Bixcey
Print Name

Date____4·1·16_____

Page 4 of 6

**Ian Schnack**

_____
Sign

_Ian Schnack_____
Print Name

Date _4-1-16_____

**Ian Kelman**

_____
Sign

_____
Print Name

Date_____

**Christina Allen**

_____
Sign

_____
Print Name

Date_____

**Dustin Mitchell**

_____
Sign

_____
Print Name

Date_____

**Ian Schnack**

_____
Sign

_____
Print Name

Date_____

**Ian Kelman**

_____
Sign

Ian Kelman
_____
Print Name

Date 4 / 1 / 16
_____

**Christina Allen**

_____
Sign

_____
Print Name

Date_____

**Dustin Mitchell**

_____
Sign

_____
Print Name

Date_____

**Ian Schnack**

_____
Sign

_____
Print Name

Date_____


**Ian Kelman**

_____
Sign

_____
Print Name

Date_____


**Christina Allen**

*Christina Allen*
_____
Sign

*Christina Allen*
_____
Print Name

Date__4·1·16_____


**Dustin Mitchell**

_____
Sign

_____
Print Name

Date_____



**Ian Schnack**

_____
Sign

_____
Print Name

Date_____


**Ian Kelman**

_____
Sign

_____
Print Name

Date_____


**Christina Allen**

_____
Sign

_____
Print Name

Date_____


**Dustin Mitchell**

_____
Sign

Dustin Mitchell
_____
Print Name

Date____4 - 1 - 16_____

Page **5** of **6**

Scanned by CamScanner

**Katherine Vega**

Sign _____

Print Name _____
Date _____

**Mitchell Jenkins**

Sign _____

Print Name _____
Date _____

**Ronald Pearl**

Sign _____

Print Name _____
Date _____

**Sal Carega**

Sign _____

Print Name _____
Date _____

**Shelbie Garner**

Sign _____

Print Name _Shelbie W Garner_____
Date _4-1-16_____

**Josh Berry**

Sign _____

Print Name _____
Date _____

Page 4 of 6

## SCHEDULE A

Gross wages to be paid to Employees, less applicable withholdings and deductions:

| | |
|---|---|
| Christina Allen Gardner | $34,551.24 |
| Joshua Berry | $44,208.10 |
| Salvador Careaga | $9,737.78 |
| Amanda Collins | $7,765.33 |
| Shelbie Garner | $34,620.31 |
| Mitchell Jenkins | $45,303.15 |
| Ian Kelman | $12,359.58 |
| Dustin Mitchell | $18,473.37 |
| Kerri Orndoff | $48,967.56 |
| Ronald Pearl | $38,457.88 |
| Joshua Ross | $62,259.89 |
| Ian Schnack | $10,634.99 |
| Katherine Vega | $12,660.82 |

Amount to be paid to Plaintiffs' attorneys for fees and costs, subject to IRS Form 1099:

| | |
|---|---|
| Jackson White, P.C. | $120,000.00 |

**Total Settlement Payment**                **$500,000.00**

# EXHIBIT B

# JACKSONWHITE
## ATTORNEYS AT LAW
### *A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:        (480) 464-1111
Facsimile No.:        (480) 464-5692
Email:        centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiffs*
By:    Michael R. Pruitt, SBN 011792
        Email:        mpruitt@jacksonwhitelaw.com
        Nathaniel J. Hill, SBN 028151
        Email:        nhill@jacksonwhitelaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sal Careaga, et al.;<br><br>              Plaintiffs<br><br>vs.<br><br>GoDaddy.com, L.L.C.;<br><br>              Defendant. | **Case No. CV-15-01282-PHX-GMS**<br><br>**DECLARATION OF PLAINTIFFS'**<br>**COUNSEL IN SUPPORT OF**<br>**SETTLEMENT AGREEMENT**<br>**AND AWARD OF ATTORNEYS'**<br>**FEES AND COSTS** |

Michael R. Pruitt, being duly sworn, upon my oath, states as follows:

1.    I make this Declaration of my own personal knowledge.

2.    The purpose of this Declaration is to advise the Court as to the facts and circumstances which warrant the conclusion that the proposed settlement is fair and a reasonable resolution of this case. *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1352-3 (11th Cir. 1982)(The Court is to scrutinize a Fair Labor Standards Act settlement for fairness).

3.      I am a 1984 graduate of Brigham Young University and a 1987 graduate of the J. Rueben Clark College of Law at Brigham Young University in Provo, Utah.

4.      I was admitted to practice in the State of Arizona in January 1988, in the United States District Court for the District of Arizona in January 1989, in the United States Court of Appeals for the Ninth Circuit in August 1990 and in the United States Supreme Court in 2011.

5.      I have been a member in good standing with the State Bar of Arizona since 1988.

6.      In 1989, I started working as an associate attorney at the law firm of Jackson White and became a shareholder in 1995.

7.      Beginning in 1992, I started developing a law practice centered primarily on employment law and litigation. From 1995 to the present, nearly all of my law practice has involved employment law and litigation.

8.      Currently, approximately 70-75% of my practice involves representing plaintiffs and employees in employment litigation matters and the remaining approximately 25-30% of my practice involves representing management and employers in defense of employment-related litigation, administrative proceedings, or litigation avoidance.

9.      During the course of my practice I have supervised and directed the work of associate attorneys and paralegals.

10.     I have represented hundreds of individuals and businesses in various employment matters and disputes.

11.     I am an active member of the Labor and Employment Law Section of the State Bar of Arizona and have spoken and lectured on various occasions at professional meetings and conferences concerning labor and employment matters and related legal issues.   I have enjoyed excellent peer recognition.   For many years, Martindale and Hubbell has given me an AV rating. Since 2013, I have been recognized by the Southwest Super Lawyers

12.     I am a co-author of the Fair Labor Standards Act chapter of the upcoming Third Edition of the ARIZONA EMPLOYMENT LAW HANDBOOK.

13.     I am the head of the employment law section at Jackson White. I currently direct the work of a fifth year associate attorney and two experienced paralegals, all of whom are full time members of the employment law section.

14.     I have served as lead counsel on numerous cases involving state and federal wage claims representing both Plaintiffs and Defendants. The vast majority of these cases included a claim for failure to pay overtime wages brought pursuant to the Fair Labor Standards Acts ("FLSA").

15.     Most of these overtime wage claims were filed as collective actions by multiple plaintiffs on behalf of themselves and those similarly situated as provided under the FLSA.

16.     These collective actions provide for discovery and potential notice to be sent to all similarly situated employees. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989). I have worked on collective action cases where such notice was sent to

- 3 -

groups of similarly situated employees that ranged in size from a dozen or more to nearly a thousand similarly situated current and former employees.

17.     I have represented Plaintiffs with FLSA claims before the U.S. District Court in Arizona, in front of the Judicial Panel on Multi-District Litigation, the Ninth Circuit Court of Appeals and the United States Supreme Court.

18.     I have also been lead attorney on many overtime cases involving multiple plaintiffs such as this matter involving thirteen plaintiffs.

19.     On or about May 17, 2013, I accepted the representation of Sal Careaga to assert a claim against his then current employer, GoDaddy, Inc. ("GoDaddy"), involving the alleged failure to pay overtime wages under the FLSA. Mr. Careaga was subsequently joined by two former GoDaddy employees, Joshua Berry and Amanda Baldwin Collins. On July 10, 2015, this matter was filed as a collective action by the three original Plaintiffs as individuals and on behalf of those similarly situated in the United States District Court for the District of Arizona (*Careaga et al. v. GoDaddy*, Case No. CV-15-01282-PHX-GMS). Prior to service of the Complaint, a First Amended Complaint with six additional Plaintiffs was filed as a matter of course on October 28, 2015 and served on the Defendant. Four additional Plaintiffs joined this matter through the filing of executed written consent to join forms and later added as named Plaintiffs through this Court's approval of the filing of a Second Amended Complaint on February 16, 2016.

20.     This case involved thirteen Plaintiffs who performed three different job functions employed at various times during the period of December 2012 through

September 2015. This case also involved a very complex and detailed settlement assessment and offer based on dates of employment, a good faith estimate of the number of hours worked by each Plaintiff accounting for extended leaves and vacation, and analyses of compensation records for each Plaintiff. There was also extensive preparation for the successful settlement conference and groundwork laid for an anticipated Motion for Conditional Certification and Notice.

21.     I was lead counsel for Plaintiffs throughout this matter. As lead counsel, I was responsible for supervising the day-to-day activities and management of the case. This included supervising the work and research efforts of an associate attorney and a paralegal.  I was also involved in negotiations, discussions and communications with opposing counsel, meetings with my legal staff, extensive communications, discussions and conference calls with all thirteen Plaintiffs, the preparation of a very detailed settlement offer which included an extensive analysis of the Plaintiffs' claims, the preparation of a Settlement Conference Memorandum and attending a Settlement Conference, and the preparation of various letters, pleadings and other case related documents.

22.     Nathaniel Hill is an associate attorney with Jackson White who has worked in the firm's employment law section since 2010.  Mr. Hill earned his law degree from the University of Kansas and is a member of the Arizona and California State Bars and is licensed in Arizona's Federal District Court and the Ninth Circuit Court of Appeals. During the course of this case, among other things, Mr. Hill performed lengthy client interviews, analyzed client statements and documents, assisted

in the preparation of detailed damage estimates, assisted in the preparation of disclosure statements, attended meetings, and performed legal research on various issues in this case including the proper method for calculation of damages.

23.    Gregory Fairbanks has a four year undergraduate degree and a paralegal certificate.   He has worked in the employment law section of Jackson White since October 4, 2004.   Among other things, Mr. Fairbanks drafted letters, pleadings and other case related documents, authored legal and other memoranda, created detailed notes, performed legal research on various issues involved in this case, communicated with Plaintiffs and opposing counsel, performed extensive detailed interviews with the various Plaintiffs, collected and analyzed client documents, analyzed and reviewed documents produced by Defendant GoDaddy, drafted a detailed settlement offer and Settlement Conference Memorandum and created detailed spreadsheets documenting and summarizing each Plaintiff's potential damages based on dates of employment, a good faith estimate of the number of hours worked and compensation records.

24.    An overview of the activities involved in the prosecution of this case, including important factual and legal issues requiring extensive analysis, review and preparation include the following:

- Prior to and after the filing of the lawsuit, Plaintiffs' counsel and staff conducted extensive interviews and consultations with all thirteen Plaintiffs in order to gather background and factual information essential to the case along with identifying, analyzing and reviewing available and supporting documentation;

- Before filing the lawsuit, Plaintiffs' counsel and staff conducted extensive research regarding whether Plaintiffs were legally entitled to overtime wages under the FLSA or whether the work they performed qualified for one or more of

the exemptions contained in the FLSA. These were central issues to the case that required extensive factual analysis and legal research in an evolving body of case law.

- Extensive research and preparatory groundwork was performed in relation to Plaintiffs' contention that the case should proceed as a collective action with notice sent to the group of similarly situated employees in anticipation of dispositive motions;

- Defendant's Settlement Conference Memorandum provided to Plaintiffs only one week prior to the Settlement Conference contained previously undisclosed documents and new information that required extensive analysis and research along with additional client interviews in order to prepare for the Settlement Conference;

- The issue of eligibility for liquidated damages and Defendant's contention that it acted in good faith was researched and considered and proved a major point of contention in this matter;

- The issue of whether Defendant willfully violated the FLSA, thereby allowing the extension of a two year statute of limitations to three years was researched and considered;

- The proper method of proving the number of hours each of the thirteen Plaintiffs worked and their individual damage calculations was carefully researched and analyzed; and

- Legal work also included the preparation of detailed complaints, disclosure statements, drafts of initial discovery requests, analysis of cases cited by GoDaddy in it defense, a comprehensive demand letter accompanied by multiple spreadsheets reflecting in detail the calculation of damages individually for each of the thirteen Plaintiffs, a case management report and extensive preparation for a Settlement Conference.

25.     Counsel for the parties also spent a meaningful amount of time in negotiations that included discussions about the legal issues involved and narrowed the range of the projected settlement amount prior to the successful Settlement Conference.

26.     The negotiated settlement represents a fair and reasonable compromise of the disputed issues of fact and law and fully and finally resolves the Plaintiffs' FLSA

overtime wage claims against Defendant GoDaddy. To my knowledge, all persons who have expressed interest in asserting claims for overtime against Defendant GoDaddy have done so and are included among the thirteen Plaintiffs. This matter has settled prior to the filing of a motion for conditional certification and notice and therefore no "class" issues need to be addressed in this matter.

27. The parties considered and negotiated numerous factors to arrive at the agreed-upon settlement amounts in recognition of each Plaintiff's claim for unpaid overtime wages along with Plaintiffs' claims for attorneys' fees and costs. The specific sums to be paid to the Plaintiffs and their attorneys are set forth below and in the parties' Settlement Agreement attached to the parties' Joint Motion to Approve Settlement.

28. The parties have agreed to settle this dispute after reaching a reasonable compromise of the issues and a fair and equitable resolution of this matter given the facts of this case and the complex and numerous legal issues involved.

29. I believe that proceeding further through dispositive motions and possible trial presented a significant risk of achieving a reduced or potentially no recovery for the Plaintiffs. This is especially true for four Plaintiffs who would not have recovered overtime damages based on a two year statute of limitations and the remaining Plaintiffs who would have seen significant reductions in recovery. Each of the thirteen Plaintiffs has reviewed his or her recovery under the proposed settlement and all agreed when questioned by Judge Duncan the settlement is fair and appropriate.

30.     Each of the Plaintiffs voluntarily entered into a written fee agreement that allowed payment of the greater of either a contingency fee of 33 1/3 % of the total common fund or an award based on the number of hours of legal work performed multiplied by the hourly rates outlined in the fee agreement. In order to facilitate settlement and maximize the amount of each Plaintiff's recovery, Jackson White has voluntarily agreed to seek the lesser amount of attorneys' fees based on the detailed billing records documenting the number of hours worked, the specific tasks performed and the hourly rates disclosed to each Plaintiff. A representative sample of the fee agreement that each of the thirteen Plaintiffs signed is attached hereto as Exhibit "1".

31.     Attached as Exhibit "2" hereto is a list of legal fees containing a description of the legal services performed in connection with this matter. Where the description of the service would reveal attorney work product or privileged information, the description has been modified to remove the protected information. Each legal service entry identifies the date, time spent, billing rate, the initials of the individual performing the work, a description of the legal services, and the total cost for the specific task. The initials of the lawyers and paralegal who worked on the case are MRP, representing myself, Michael R. Pruitt, NJH for Nathaniel Hill and GF for my paralegal, Greg Fairbanks. Time entries are measured in tenths of hours.

32.     The billing record is based upon contemporaneous entries made by those who performed the work using specialized software on their work computer. Each entry documents the time spent and provides a description of the task. The software automatically enters the proper hourly rate and total dollar amount for the task based on

the individual making the entry, their position within Jackson White and their assigned hourly rate. This information is then transmitted to the Jackson White accounting department and can be used to create various reports such as that seen in Exhibit "2." The information is also stored in the firm's computer system.

33.     The time keeping and billing practices and procedures utilized by Jackson White for this case are standard to the law firm of Jackson White and part of its normal business operations.  I have personally reviewed the billing and time keeping records compiled by Jackson White contained in Exhibit "2" for this matter.  Duplicative or unnecessary entries have been eliminated.  Time to complete some tasks have been reduced.  These records contain an accurate, reasonable compilation of attorney and paralegal time and were necessary and appropriate given the circumstances and legal issues involved in this case.

34.     The Defendant contended the three positions at issue (i.e., account manager, project leader and web builder) were all exempt from the overtime requirements of the FLSA. In addition, the Defendant contended that it acted in good faith when it made the three positions exempt in late 2012 after careful consultation with experienced employment law legal counsel and experienced human resources personnel. This good faith defense, if successful, would eliminate any claim for liquidated damages and would have limited the Plaintiffs' claims to two years instead of three. If Defendant's exemption defense was successful, Plaintiffs would recover nothing.

35.     In the course of negotiations, the thirteen Plaintiffs estimated their collective overtime claims in a best case scenario with a three year statute of limitations was $429,451.57. Defendants believed Plaintiffs' estimate was excessive and estimated the value of all overtime actually worked over a three year statute of limitations to be approximately $352,014.26 for all thirteen Plaintiffs.

36.     I believe the settlement is fair and reasonable because Plaintiffs will receive a total recovery of 88.5% of their best case scenario overtime wage claims over a three year statute of limitations. Plaintiffs will receive a windfall amounting to 108% of the Defendant's estimate of the value of Plaintiffs' overtime claims, assuming a three year statute of limitations.

37.     If Defendant had prevailed on its good faith defense but Plaintiffs prevailed on the exemption issue, the Plaintiffs' best case estimated overtime recovery over a two year statute of limitations would have been approximately $185,608.42.

38.     The following is a summary of the number of hours, hourly rates and value of attorneys' fees involved in prosecuting this case:

| Professional | | Hourly Rate | Hours | Value |
|---|---|---|---|---|
| Michael R. Pruitt | (Lead Counsel) | $450.00 | 113.00 | $50,850.00 |
| Nathaniel Hill | (Associate) | $295.00 | 28.10 | $8,289.50 |
| Gregory Fairbanks | (Paralegal) | $175.00 | 345.00 | $60,375.00 |
| **TOTAL** | | | | **$119,500.00**[1] |

---

[1] The actual amount is $119,514.50, which has been voluntarily reduced to $119,500.00.

39.     Taxable costs include the following:

**Filing Fees:**

Complaint filed in the United States District Court                    $400.00

**Process Server Fees:**

Service of process upon GoDaddy.com, LLC                          $100.00

**TOTAL**                                                                              **$500.00**

40.     I am familiar with the rates charged by attorneys and paralegals in matters of this type in the Phoenix metropolitan area. Based on that knowledge, and given the number of Plaintiffs involved, the complexity of the case, the uncertainty of recovery and the numerous legal and factual issues that were addressed, I believe that the billing rates used by Jackson White are fair and reasonable for the work performed and would be comparable to those charged by other qualified employment law attorneys and paralegals in the Phoenix metro area.

41.     The proposed distribution to each of the Plaintiffs should be considered fair and equitable since it is related to the length of each Plaintiff's employment with Defendant and the potential overtime wage claim each brought to the lawsuit. All thirteen Plaintiffs participated in person at the Settlement Conference on March 28, 2016 with Judge Duncan. All Plaintiffs affirmed on the record that they understood the terms of the settlement and agreed to the settlement.

42.     The proposed settlement includes a wide range of amounts based largely on the fact that the relevant employment period of the Plaintiffs ranged from approximately three months to three years. Each Plaintiff also worked a unique number of hours per week.

43.     Each of the thirteen Plaintiffs is to receive the amount set forth in the parties' settlement agreement in the aggregate amount of $380,000.00.

44.     Pursuant to the parties' settlement agreement, Jackson White is to receive a total payment of $119,500 for attorneys' fees and $500 for costs representing 24% of the common fund and total settlement amount agreed to by the Defendant.

45.     In an FLSA action, an award of fees and costs to the prevailing Plaintiffs is mandatory.   29 U.S.C. § 216. Given the facts and the uncertainty of recovery of damages or attorneys' fees at the time Jackson White agreed to take on this matter on behalf of the Plaintiffs, along with the complexity and numerous legal issues involved, the proposed settlement amount is fair to all of the parties involved and allows them to resolve this matter by mutual agreement and move forward.

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct and that the attorneys' fees and cost incurred in this action were reasonable and necessarily performed.

**DATED** this 4th day of April, 2016.

**JACKSON WHITE**

By: Michael R. Pruitt, No. 011792
40 North Center Street, Suite 200
Mesa, Arizona   85201
Attorneys for Plaintiffs

**"Exhibit 1"**

KELLY G. BLACK
SUSAN B. COURT
CHRISTINE F. CROCKETT
TIMOTHY W. DURKIN
JARED E. EVERTON
ROGER R. FOOTE
JEREMY S. GEIGLE
MARK A. HEATH
NATHANIEL J. HILL†
RYAN K. HODGES
ERIC M. JACKSON‡

†Also Licensed in California
‡Also Licensed in Utah

ERIC K. MACDONALD
ANTHONY H. MISSELDINE
SCOTT L. POTTER
MICHAEL R. PRUITT
OTTO S. SHILL, III*
BENJAMIN A. SKINNER
JAMES L. TANNER
J. GRANT WALKER
BRADLEY D. WEECH
DAVID L. WEED
RICHARD A. WHITE

*Also Licensed in Texas

## JACKSON WHITE
### ATTORNEYS AT LAW
#### *A Professional Corporation*

May 17, 2013

# FEE AGREEMENT

The client hires the law firm of Jackson White to represent the client within the scope of representation and according to the terms and conditions stated herein. Jackson White is to be compensated using the fee arrangement outlined below.

### *Summary of Terms and Conditions*

| | |
|---|---|
| **Client** | **Sal Careaga** |
| | The law firm of Jackson White will represent the above named client, also referred to herein as a "named Plaintiff," whose signature below signifies agreement and consent to all of the provisions contained in this agreement. |
| **Lead Attorney** | Michael R. Pruitt is the designated lead attorney for Jackson White on this matter. |
| | Within the scope of representation outlined in this fee agreement. other attorney(s), paralegal(s) and legal staff employed by Jackson White may be designated to perform work on this case under the direction of the lead attorney. |
| **Scope of Representation** | Once fully signed and executed, this agreement confirms that Jackson White agrees to represent the client in connection with his individual claim against his employer, **Go Daddy**, involving failure to properly pay him "overtime" wages as outlined in the Fair Labor Standards Act ("FLSA"). |
| | If there are other current and former employees "similarly situated" to the client who have related overtime wage claims against Go Daddy, any lawsuit filed on behalf of the client may be structured as a collective action as provided for under the FLSA. Under a collective action lawsuit, Jackson White will represent the client regarding his individual claim, but also |

480.464.1111
Toll Free 800.243.1160
Fax 480.464.5692

40 North Center Street, Suite 200 • Mesa, Arizona 85201
Offices in Mesa, Peoria & Casa Grande

E-Mail: firm@jacksonwhitelaw.com
www.jacksonwhitelaw.com
www.arizonaseniorlaw.com

request that the Court send notice of the lawsuit and information regarding how to join or "opt-in" to the case to all other similarly situated current and former employees. Any individual who joins the lawsuit as part of this "notice" effort will be referred to herein as an "opt-in Plaintiff."

Jackson White's representation of the client as governed by this fee agreement will extend only to those services outlined within this scope of representation. Any other representation or work performed by Jackson White beyond this scope of representation may require a separate fee agreement at the discretion of Jackson White.

**Group Representative**

The client agrees that if any lawsuit is filed as a collective action, those designated as named Plaintiff(s), such as the client, will act as a group representative with the power to make binding decisions by agreement for themselves and all other Plaintiffs, including any opt-in Plaintiffs who might join the lawsuit as part of the notice effort. Any opt-in Plaintiff who joins this lawsuit must agree to abide by the decisions made by a consensus of the group representatives. These decisions will be based on consultations with and recommendations from Jackson White and include such things as how to most effectively proceed in this case and decisions related to making and accepting offers of settlement.

**Basis of Compensation and Fee to Jackson White: Contingency or an Award of Attorneys' Fees**

Jackson White assumes the financial risk of going forward with this matter with no guarantee of success and will be compensated for the work it performs only if there is a recovery made on behalf of the client. If there is no monetary recovery for the client, the client will owe Jackson White nothing.

In the event of a recovery on behalf of the client, Jackson White will be paid under one of two possible scenarios, either through the use of a "contingency fee" or through an amount specifically designated as covering "attorneys' fees."

**Compensation Through Contingency Fee:** If there is a recovery and settlement through a contingency fee arrangement, Jackson White's services will be compensated by receiving a percentage of the total gross monetary recovery in the case. The total gross monetary recovery includes all gross amounts awarded in settlement or at trial, including all overtime wages and other damages, interest, attorneys' fees and costs.

The percentage amount used to calculate any contingency fee will depend on how far the case has progressed. The contingency fee percentage will be 33 1/3% of any gross recovery made <u>before</u> the court imposed deadline

for the completion of discovery. The contingency fee percentage shall increase and be 40% of any gross recovery made after the court imposed deadline for the completion of discovery.

**Compensation Through Amount Designated for Attorneys' Fees:** In the alternative compensation scenario, assuming a recovery for the client based through a settlement amount agreed to by the parties or an amount awarded by the Court, it is possible that the settlement or court award may have an additional separate amount designated to cover attorneys' fees and the costs incurred by Jackson White in litigating the case. Under this scenario, the amount of designated Attorneys' fees will be proportional to the hourly rate charged and number of hours worked by the legal staff at Jackson White. The current hourly rates for legal staff at Jackson White are: Shareholder Counsel $300 - $450; Associate Counsel $225 - $295; and Paralegal $150-$175.

In the event of an agreement or award which includes a specific amount designated for attorneys' fees and costs, Jackson White reserves the right to receive the greater of the contingency fee percentage of the total gross monetary recovery or the amount designated to cover attorneys' fees and costs.

**Recovery Through Periodic Payments:** If any monetary recovery is structured so that payment of the recovery is made periodically, the compensation received by Jackson White shall be based on the present day cash value of the total monetary recovery.

**Unreimbursed Costs and Expenses**

Jackson White reserves the right to be compensated for any unreimbursed costs and expenses it incurs in litigating this lawsuit. These costs and expenses may include such things as court filing fees, service of process, computer assisted research, court reporting, document reproduction, and travel expenses.

Jackson White will charge interest on any advanced costs and expenses at the rate of 1.5% per month. This charge will be treated as an additional cost and expense.

**Net Monetary Recovery for the Client and any other Plaintiffs**

In the event of a monetary recovery, if Jackson White is to be compensated through the previously outlined contingency fee basis, the contingency fee will be subtracted from the total gross monetary recovery followed by subtraction of any remaining unreimbursed costs and expenses. The amount subtracted to cover the contingency fee and unreimbursed

expenses becomes the property of Jackson White. The client and any other Plaintiffs who may join this lawsuit receive the net remainder of the recovery.

In the event of a monetary recovery under the alternative scenario involving a separate specified amount designated to compensate Jackson White for attorneys' fees and costs, the client and any other Plaintiffs who may join this lawsuit receive the monetary amount designated to compensate them for their damages.

**Division of Recovery For Multiple Plaintiffs**

In the event of recovery, the monetary amount outlined above designated for compensating the client and any other Plaintiffs who may have joined this lawsuit will be distributed on a prorated basis. Each Plaintiff, including the client, will receive an equitable and just share of the net monetary amount based on their respective overtime wage while employed and number of overtime hours worked.

**Retainer Fee**

The client will not be charged a retainer fee.

**Conditions of Representation**

The client understands and acknowledges that it is impossible to predict the outcome of any legal representation. Litigation and trial may result in unforeseen and unforeseeable developments. In addition, objective analysis does not take into account the individual views of judges and juries. Thus, while Jackson White will use its best efforts to represent the Client, it cannot and does not guarantee a particular outcome.

Jackson White will keep the client appraised of developments and proceedings. The client in turn agrees to keep Jackson White advised of his whereabouts and update Jackson White with his most current contact information and to fully and completely cooperate in the preparation and legal proceeding of this matter.

Jackson White reserves the right to make certain tactical and legal decisions that must be made during the course of its representation of the client within the bounds of recognized legal ethics. As applicable, the client, or the group representative(s), will be able to make ultimate decisions with regard to settlement or prosecution of the claim. In the event, however, that differences of opinion arise between the client and Jackson White concerning such matters, Jackson White reserves the right to withdraw as counsel when, in its sole discretion, these differences render its representation ineffective or would result in an ethical violation.

**Representation**

The client understands that Jackson White may represent multiple clients

**of Multiple Clients** in this lawsuit pursuing substantially similar claims under the FLSA. In certain circumstances the representation of multiple clients in the same legal matter could create a potential conflict of interest. For example, a potential conflict could arise when the same attorney is representing multiple claimants seeking recovery from a single, limited source of income if the available income is insufficient to cover the claimants' collective damages. Given the facts and circumstances of the particular claims involved in this matter, along with the scope of representation for which Jackson White is retained, it is not currently believed there would be a conflict of interest arising from Jackson White's representation of multiple clients. Accordingly, the client's signature below indicates that he has had this issue explained to his satisfaction and requests that Jackson White proceed forward and represent the client.

In the event that circumstances change, or new facts come to light, which lead Jackson White to believe that an actual conflict of interest exists, the client agrees that Jackson White may withdraw as client's counsel.

**Lien** As security for covering the attorneys' fees, costs and expenses incurred during the course of this lawsuit, the client grants Jackson White a lien on any and all recovery or settlement amounts.

**Termination of Legal Services** If the client decides to unilaterally terminate the services of Jackson White after signing this agreement but before settlement or final resolution, the client agrees that the contingency fee agreement previously outlined is rendered null and void and agrees to pay the value of the legal service rendered for the client at the rate of $450 per hour for attorney time and $175 per hour for paralegal time.

**Appeal** Jackson White reserves the right to modify this fee arrangement if an appeal is taken.

**File Retention and Destruction** The client agrees that Jackson White may dispose of the file maintained in connection with this representation according to Jackson White's records retention policy, as amended.

The file or any part thereof may be destroyed at the conclusion of its retention period (three years) without further notice to the client, or at an earlier time after 30-day written notice is sent to the client's last known address. The client agrees to notify Jackson White in writing of any items, including client's property, which has value beyond its use in the

representation. Absent such written notice, client agrees that such items may be destroyed along with the file or any part thereof.

**This agreement supersedes all prior or contrary agreements between the client and Jackson White with respect to any matter which is the subject of this agreement.**

*This fee Agreement must be signed by the client's spouse, if any. The signature of the client below without any signature of a spouse is a representation and warranty on the part of the client that he is not married.*

*The client acknowledges that his signature below signifies that he fully agrees to and accepts the terms and conditions outlined and contained herein.*

### *Personal Signers*

**Client**      _Sal Careaga_        _5/17/2013_
       Sal Careaga          Date

**Spouse**     _____       _____
                               Date

**Lead Attorney**   _Michael R. Pruitt_      _5/17/2013_
          Michael R. Pruitt        Date

**"Exhibit 2"**

## ITEMIZATION OF ATTORNEY'S FEES

| Date | Initials | Description | Units | Price | Amount |
|------|----------|-------------|-------|-------|--------|
| 05/17/2013 | MRP | Prepare for meeting with Sal Careaga of Go Daddy regarding possible FLSA claim [.3]; Meeting with Greg Fairbanks to discuss potential claim and upcoming meeting [.3]; Customize fee agreement for FLSA individual and conditional certification case [.6]; Research other pending FLSA cases involving Go Daddy [.5]; Meeting with Sal Careaga regarding potential FLSA claims [1.6]; Begin research of FLSA exemption issues [1.9] | 5.20 | 450.00 | 2,340.00 |
| 05/17/2013 | GF | Draft fee agreement [0.8]; Research Go Daddy on AZ Corporation Commission web site [0.3]; Research prior civil lawsuits involving Go Daddy [0.5]; Confer with Mr. Pruitt prior to meeting with Mr. Careaga [0.3]; Meeting with Mr. Pruitt and Mr. Careaga [1.6] | 3.50 | 175.00 | 612.50 |
| 05/20/2013 | MRP | Finalize Fee Agreement with Sal Careaga with FLSA claim against Go Daddy | 0.30 | 450.00 | 135.00 |
| 05/21/2013 | GF | Prepare additional fee agreements for other prospective Plaintiffs against GoDaddy | 0.50 | 175.00 | 87.50 |
| 05/22/2013 | MRP | Prepare for and attend meeting with JD Chapman and Ian Schnack regarding FLSA claims against Go Daddy [1.2]; Assess duties performed and comparison to FLSA-recognized exemptions [1.5]; Meeting with Greg Fairbanks to discuss strategy [.3]; Receipt and analyze email from Sal Careaga dated May 20, 2013 [.1] | 3.10 | 450.00 | 1,395.00 |
| 05/22/2013 | GF | Meeting with additional prospective plaintiffs, Mr. Pruitt and Mr. Careaga regarding overtime claim [1.0]; Research misclassification of relevant positions for overtime purpose [4.8] | 5.80 | 175.00 | 1,015.00 |
| 05/24/2013 | MRP | Meeting with Greg Fairbanks to discuss three GoDaddy positions and preliminary research on exemption issues regarding FLSA claim | 0.50 | 450.00 | 225.00 |
| 05/24/2013 | GF | Meeting with Mr. Pruitt to discuss research regarding three GoDaddy positions and overtime under the | 0.50 | 175.00 | 87.50 |

## ITEMIZATION OF ATTORNEY'S FEES

FLSA

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 05/28/2013 | GF | Begin outline of Complaint against GoDaddy | 2.50 | 175.00 | 437.50 |
| 05/29/2013 | MRP | Two meetings with Sal Careaga and Greg Fairbanks to further investigate facts [.6]; Receipt and analyze email from Sal Careaga dated May 29, 2013 and follow up with Greg Fairbanks regarding interviews [.3] | 0.90 | 450.00 | 405.00 |
| 05/29/2013 | GF | Meeting with Mr. Pruitt and Mr. Careaga regarding status and potential plaintiffs [.4]; Meeting with Mr. Pruitt to review interview of Mr. Careaga [.3]; Research case law addressing analogous positions under FLSA overtime analysis [3.0]; Continue to outline draft Complaint [2.0] | 5.70 | 175.00 | 997.50 |
| 05/30/2013 | GF | Research application of computer exemption to FLSA overtime claim against GoDaddy | 3.50 | 175.00 | 612.50 |
| 05/31/2013 | MRP | Analyze outline of Complaint and meeting with Greg Fairbanks to discuss content of Complaint | 0.50 | 450.00 | 225.00 |
| 06/14/2013 | GF | Prepare for and conduct telephone interview with prospective plaintiff Christina Allen [1.8]; Draft parties, jurisdictional background and beginning of factual background sections of Complaint [3.9] | 5.70 | 175.00 | 997.50 |
| 06/18/2013 | GF | Draft factual and background sections of Complaint regarding duties performed | 5.10 | 175.00 | 892.50 |
| 06/21/2013 | GF | Research executive and administrative exemption case law and possible application to duties of three positions in GoDaddy case | 4.40 | 175.00 | 770.00 |
| 07/11/2013 | GF | Research potential defense of professional exemption under FLSA and analyze job descriptions of positions and assess potential application of exemption | 3.20 | 175.00 | 560.00 |
| 08/01/2013 | GF | Prepare for and conduct telephone interview with potential Plaintiff Amanda Collins [a/k/a Amanda Baldwin] [1.5]; Draft fee agreement for Ms. Collins [.4]; Leave several voicemails for other prospective Plaintiffs [.5] | 2.40 | 175.00 | 420.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| 08/16/2013 | GF | Continue to prepare factual background section of Complaint with new information learned | 3.20 | 175.00 | 560.00 |
| 08/22/2013 | GF | Telephone call with new prospective Plaintiff | 0.30 | 175.00 | 52.50 |
| 08/26/2013 | GF | Prepare updated factual allegations in complaint regarding duties of account manager, project leader and web builder | 3.10 | 175.00 | 542.50 |
| 09/03/2013 | GF | Draft factual allegations in Complaint concerning job duties | 2.00 | 175.00 | 350.00 |
| 10/15/2013 | GF | Continue to draft factual background section of Complaint relating to overtime rate, lack of good faith and willfulness | 3.10 | 175.00 | 542.50 |
| 10/24/2013 | GF | Draft Complaint sections outlining causes of action and prayer for relief | 2.30 | 175.00 | 402.50 |
| 11/06/2013 | GF | Revise allegations in factual background section of Complaint in light of additional information provided by Plaintiffs | 2.70 | 175.00 | 472.50 |
| 01/02/2014 | MRP | Meeting with Greg Fairbanks to discuss status of Complaint | 0.20 | 450.00 | 90.00 |
| 01/02/2014 | GF | Edit Complaint and incorporate new parties | 2.90 | 175.00 | 507.50 |
| 01/06/2014 | GF | Research and update litigation history of GoDaddy in reference to FLSA claims relating to good faith defense | 2.50 | 175.00 | 437.50 |
| 01/16/2014 | GF | Analyze documentation provided by Plaintiffs to ensure accuracy of allegations in draft Complaint [2.9]; Begin assessment of overtime claim for each Plaintiff [2.1] | 5.00 | 175.00 | 875.00 |
| 03/10/2014 | GF | Continue to assess value of each Plaintiffs' overtime claim [1.7]; Research determination of effective hourly rates, application of bonuses to hourly rates and fluctuating workweek defense [3.2] | 4.90 | 175.00 | 857.50 |
| 03/14/2014 | GF | Telephone call with Mr. Careaga regarding status and potential Plaintiffs [.3]; Edit Complaint with new information provided [2.1] | 2.40 | 175.00 | 420.00 |
| 03/17/2014 | GF | Leave detailed voicemails to several potential Plaintiffs regarding FLSA claim | 0.50 | 175.00 | 87.50 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| 05/06/2014 | GF | Update Complaint's parties and factual background sections with all Plaintiffs who have signed fee agreements [2.5]; Edit other sections of Complaint with updated information from Plaintiffs [4.1] | 6.60 | 175.00 | 1,155.00 |
| 07/18/2014 | MRP | Meeting with Joshua Berry to discuss his employment and overtime claims against Go Daddy [1.7]; Assess new information on project leader and potential overtime defenses [1.5] | 3.20 | 450.00 | 1,440.00 |
| 07/21/2014 | MRP | Conference with Greg Fairbanks regarding content of Complaint | 0.10 | 450.00 | 45.00 |
| 07/21/2014 | GF | Discuss contents of Complaint with Mr. Pruitt | 0.10 | 175.00 | 17.50 |
| 07/31/2014 | GF | Update Complaint with project leader position and add Joshua Berry to Complaint | 4.50 | 175.00 | 787.50 |
| 08/01/2014 | MRP | Conference with Greg Fairbanks regarding status of Complaint | 0.20 | 450.00 | 90.00 |
| 09/24/2014 | MRP | Conference with Greg Fairbanks regarding status and content of complaint | 0.20 | 450.00 | 90.00 |
| 09/29/2014 | GF | Telephone interview of Joshua Berry to clarify facts and assess value of overtime claim | 1.40 | 175.00 | 245.00 |
| 09/30/2014 | GF | Telephone call to Dustin Mitchell to assess duties and possible overtime claims | 1.00 | 175.00 | 175.00 |
| 01/29/2015 | GF | Edit Complaint with updated information from recent interviews | 3.10 | 175.00 | 542.50 |
| 02/04/2015 | GF | Continue drafting of factual background section of Complaint | 2.20 | 175.00 | 385.00 |
| 03/12/2015 | GF | Proofread and edit Complaint | 3.50 | 175.00 | 612.50 |
| 03/23/2015 | MRP | Conference with Greg Fairbanks regarding Complaint | 0.20 | 450.00 | 90.00 |
| 04/13/2015 | GF | Assist in preparing consent to join forms for Plaintiffs | 1.00 | 175.00 | 175.00 |
| 04/20/2015 | MRP | Prepare and edit Complaint | 2.50 | 450.00 | 1,125.00 |
| 04/22/2015 | GF | Edit Complaint with Mr. Pruitt's revisions and suggestions | 1.30 | 175.00 | 227.50 |
| 06/05/2015 | MRP | Conference with Greg Fairbanks regarding status of consent to joins | 0.20 | 450.00 | 90.00 |
| 06/24/2015 | MRP | Conference with Greg Fairbanks regarding status of finalizing Complaint | 0.20 | 450.00 | 90.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| 06/25/2015 | GF | Draft remaining consent to join forms [.5]; Telephone and voicemail calls with Plaintiffs regarding same [.5] | 1.00 | 175.00 | 175.00 |
|---|---|---|---|---|---|
| 07/07/2015 | MRP | Edit and finalize Complaint | 1.60 | 450.00 | 720.00 |
| 07/20/2015 | MRP | Receipt and analyze Order filed July 10, 2015 | 0.10 | 450.00 | 45.00 |
| 07/28/2015 | MRP | Receipt and analyze blog posting on GoDaddy overtime lawsuit and search other sources for reportings of overtime case | 1.10 | 450.00 | 495.00 |
| 08/05/2015 | GF | Prepare for meeting with new prospective plaintiff [.3]; Meeting with potential plaintiff Mitchell Jenkins [.8] | 1.10 | 175.00 | 192.50 |
| 08/05/2015 | MRP | Meeting with Mitchell Jenkins regarding his overtime claim against GoDaddy [.8]; Assess timing of service of process, strategy, and needs to amend the Complaint [.5] | 1.30 | 450.00 | 585.00 |
| 08/06/2015 | MRP | Meeting with Kerri Orndoff regarding her overtime claims against GoDaddy [1.2] | 1.20 | 450.00 | 540.00 |
| 08/06/2015 | GF | Prepare for meeting with Kerri Orndoff [.3]; Meeting with potential plaintiff Kerri Orndoff [1.2] | 1.50 | 175.00 | 262.50 |
| 08/11/2015 | GF | Prepare for meeting with Joshua Ross [.4]; Meeting with Joshua Ross [1.1]; Draft Amended Complaint to add additional plaintiffs [2.9] | 4.40 | 175.00 | 770.00 |
| 08/14/2015 | GF | Draft new Notice of Filing of Consent to Join Forms | 0.90 | 175.00 | 157.50 |
| 08/17/2015 | GF | Finalize notice and consent to join forms for filing | 0.50 | 175.00 | 87.50 |
| 08/20/2015 | GF | Prepare  Plaintiffs' First Request for Production of Documents draft | 5.20 | 175.00 | 910.00 |
| 08/24/2015 | GF | Prepare First Amended Complaint | 0.50 | 175.00 | 87.50 |
| 09/04/2015 | GF | Continue to prepare First Amended Complaint | 3.50 | 175.00 | 612.50 |
| 09/10/2015 | MRP | Conference with Greg Fairbanks regarding preparation of First Amended Complaint [.1]; Receipt and analyze email from Mitchell Jenkins dated September 10, 2015 regarding separation agreement and conference with Greg Fairbanks regarding same [.2] | 0.30 | 450.00 | 135.00 |
| 09/11/2015 | MRP | Meeting with Mitchell Jenkins | 0.80 | 450.00 | 360.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | regarding his separation from GoDaddy and strategy [.8] | | | |
| 09/14/2015 | MRP | Analyze documentation from Mitchell Jenkins from Go Daddy including change in project leader position and job descriptions [.2] | 0.20 | 450.00 | 90.00 |
| 09/30/2015 | GF | Telephone interview with new client Katherine Vega [.3] | 0.30 | 175.00 | 52.50 |
| 10/05/2015 | GF | Telephone interview with Katherine Vega [.7]; Draft Consent to Join Form and Fee Agreement [.4]; E-mail documents to Ms. Vega [.1] | 1.20 | 175.00 | 210.00 |
| 10/08/2015 | GF | Telephone interview with Shelbie Garner [.4]; Draft Consent to Join Form and e-mail to Ms. Garner [.4] | 0.80 | 175.00 | 140.00 |
| 10/09/2015 | MRP | Receipt and analyze email from Mitchell Jenkins dated October 9, 2015 | 0.10 | 450.00 | 45.00 |
| 10/09/2015 | GF | Contact Ms. Garner regarding signing of consent to join form [.1]; Draft and finalize Notice regarding filing of Consent Forms [.5]; Review e-mail from Mr. Careaga regarding update [.2] | 0.80 | 175.00 | 140.00 |
| 10/12/2015 | GF | Telephone interview with Ronald Pearl [.8]; Prepare Consent to Join Form and Fee Agreement [.5]; Send document to Mr. Pearl for signature [.1] | 1.40 | 175.00 | 245.00 |
| 10/16/2015 | GF | Draft and finalize Notice of filing of Consent Form for Mr. Pearl | 0.50 | 175.00 | 87.50 |
| 10/19/2015 | MRP | Analyze existing plaintiffs and draft of First Amended Complaint | 0.30 | 450.00 | 135.00 |
| 10/26/2015 | MRP | Conference with Greg Fairbanks regarding status and content of First Amended Complaint | 0.10 | 450.00 | 45.00 |
| 10/26/2015 | GF | Review Local Rules for filing amended complaint as a matter of course [.5]; Draft First Amended Complaint to add new Plaintiffs [1.0]; Discuss Amended Complaint and status with Mr. Pruitt [.2] | 1.70 | 175.00 | 297.50 |
| 10/26/2015 | GF | Meeting with Mr. Pruitt regarding status and First Amended Complaint | 0.20 | 175.00 | 35.00 |
| 10/27/2015 | MRP | Prepare and edit First Amended Complaint [1.2] | 1.20 | 450.00 | 540.00 |
| 10/27/2015 | GF | Draft Notice of filing Amended | 1.20 | 175.00 | 210.00 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  | Complaint [.5]; Draft redline version of First Amended Complaint [.5]; Telephone call with Ms. Orndoff regarding status [.2] |  |  |  |
|---|---|---|---|---|---|
| 10/28/2015 | MRP | Conferences with Greg Fairbanks regarding revisions to First Amended Complaint [.6]; Finalize editing of First Amended Complaint [.8]; Conference with Greg Fairbanks regarding filing First Amended Complaint [.1] | 1.50 | 450.00 | 675.00 |
| 10/28/2015 | GF | Edit and finalize First Amended Complaint and associated notice for filing [.8]; Discussions with Mr. Pruitt regarding status, change of GoDaddy employees to hourly workers, First Amended Complaint and schedule [.6] | 1.40 | 175.00 | 245.00 |
| 10/29/2015 | GF | Coordinate and arrange for service of First Amended Complaint and other documents | 0.50 | 175.00 | 87.50 |
| 11/03/2015 | GF | Follow up coordination and assist in arranging for service on Defendant | 0.40 | 175.00 | 70.00 |
| 11/04/2015 | MRP | Receipt and analyze Affidavit of Service dated November 3, 2015 | 0.10 | 450.00 | 45.00 |
| 11/05/2015 | MRP | Receipt and analyze email from Mitchell Jenkins dated November 5, 2015 [.1]; Prepare letter to all Plaintiffs regarding status [.8]; Conferences with Greg Fairbanks regarding collecting damages information for initial disclosure [.5] | 1.40 | 450.00 | 630.00 |
| 11/05/2015 | GF | Conference with Mr. Pruitt regarding schedule and damages [.5]; Locate and prepare notes on background information of various Plaintiffs [.6] | 1.10 | 175.00 | 192.50 |
| 11/23/2015 | MRP | Prepare letter to Plaintiffs with update [1.1]; Receipt and analyze email from Benjamin Naylor dated November 23, 2015 and prepare responsive email [.2] | 1.30 | 450.00 | 585.00 |
| 11/23/2015 | GF | Draft letter to all Plaintiffs regarding documents and information needed for preparing initial disclosure and calculating damages | 1.50 | 175.00 | 262.50 |
| 11/24/2015 | MRP | Telephone call with Mr. Napier and Mr. Barton regarding case and settlement negotiations [.2]; Conference with Greg Fairbanks regarding content of comprehensive | 2.00 | 450.00 | 900.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | settlement demand letter [.3]; Receipt and analyze Defendant's Answer and affirmative defenses [1.5] | | | |
| 11/24/2015 | GF | Conference with Mr. Pruitt regarding status and schedule | 0.30 | 175.00 | 52.50 |
| 11/30/2015 | MRP | Conference with Greg Fairbanks regarding preparation of Case Management Plan [.3]; Conference with Nate Hill regarding gathering information from Plaintiffs for settlement demand [.2]; Receipt and analyze email from Benjamin Naylor dated November 29, 2015 regarding Rule 26(f) meeting and prepare responsive email [.3]; Conference with Nate Hill and Greg Fairbanks regarding collection of damage information to prepare settlement offer [.4]; Receipt and analyze Order Setting Rule 16 Case Management Conference [.3] | 1.50 | 450.00 | 675.00 |
| 11/30/2015 | GF | Conference with Mr. Pruitt regarding Case Management Plan and status [.3]; Meeting with Mr. Pruitt, Mr. Hill and Ms. Pruitt regarding damage calculations and arranging for more detailed client interviews [.5]; Review Court's order regarding contents of Case Management Report [.3]; Review Answer [.6]; Draft Proposed Case Management Plan [5.5] | 7.20 | 175.00 | 1,260.00 |
| 11/30/2015 | NJH | Meetings with Mr. Pruitt and Greg Fairbanks regarding scheduling conference and assessing Plaintiffs' damages | 0.50 | 295.00 | 147.50 |
| 12/01/2015 | MRP | Receipt and analyze email from Benjamin Naylor dated December 1, 2015 [.1]; Further analysis of Order Setting Rule 16 Case Management Conference and conference with Greg Fairbanks regarding content of Case Management Plan [.3]; Prepare letter to Plaintiffs with update [.5]; Conferences with Greg Fairbanks regarding content of Case Management Plan and electronic discovery [.4] | 1.30 | 450.00 | 585.00 |
| 12/01/2015 | NJH | Analyze pleadings and case documents to assist with discover planning [1.2]; | 4.10 | 295.00 | 1,209.50 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | telephone interview with Mitchell Jenkins regarding duties and damages [1.6]; telephone interview with Joshua Ross regarding same [.5]; review of FLSA conditional certification cases and research [.4]; Review and analysis of case management orders [.4] | | | |
| 12/01/2015 | GF | Prepare list of questions for client interviews [.9]; Telephone interview with Shelbie Garner regarding background information for calculation of damages [1.3]; Continue work on Case Management Report [5.1]; Telephone interview with Ron Pearl regarding background information for calculating damages [1.3]; Conferences with Mr. Pruitt regarding electronic discovery and Case Management Report [1.0] | 9.60 | 175.00 | 1,680.00 |
| 12/02/2015 | MRP | Prepare Case Management Report [1.0]; Conferences with Greg Fairbanks regarding discovery and electronic discovery issues [1.0]; Prepare for and participate in Rule 26(f) conference with opposing counsel [.5]; Receipt and analyze Defendant's Rule 7.1 Corporate Disclosure Statement [.1]; Further analysis of Defendant GoDaddy.Com LLC's affirmative defenses and admissions in Answer to Plaintiffs' First Amended Complaint [.5]; Receipt and analyze email from Mitchell Jenkins with attachments [.2] | 3.30 | 450.00 | 1,485.00 |
| 12/02/2015 | GF | Conference with IT department regarding electronic discovery and strategy [.8]; Research and review electronic discovery issues and format for production [2.0]; Conference with Mr. Pruitt regarding Case Management Report and electronic discovery [.5]; Edit and update Case Management Report [.5]; Finalize Case Management Report and e-mail draft to opposing counsel [.2]; Telephonic interview with Mr. Careaga regarding additional factual background and damages [1.3]; Review Plaintiffs' documents for disclosure assessment and privilege [.5]; Prepare damage | 6.80 | 175.00 | 1,190.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | calculations [1.0] | | | |
| 12/02/2015 | NJH | Telephone call with Amanda Collins regarding damages assessment [.8]; telephone call to Joshua Berry [.1]; compiling interviews of witnesses and disclosure documents [1.5] | 2.40 | 295.00 | 708.00 |
| 12/03/2015 | MRP | Receipt and analyze emails from Mandi Collins dated December 3, 2015 [.2]; Several conferences with Greg Fairbanks regarding additional former employees who have made contact and strategy for contact [1.0] | 1.20 | 450.00 | 540.00 |
| 12/03/2015 | GF | Telephone interview with Amanda Collins [1.5]; Telephone interview with Christina Allen [1.3]; Telephone interview with Katherine Vega [.8]; Prepare damage calculations for all three individuals [2.6]; Conferences with Mr. Pruitt regarding new clients and schedule to add to case [1.0]; Review new client documents [.5] | 7.70 | 175.00 | 1,347.50 |
| 12/03/2015 | NJH | Analysis of plaintiffs' statements regarding overtime and compiling interview summaries | 3.40 | 295.00 | 1,003.00 |
| 12/04/2015 | MRP | Receipt and analyze email from Joshua Berry dated November 30, 2015 [.1]; Conferences with Greg Fairbanks regarding new prospective plaintiffs and assessment of overtime claims [.6] | 0.70 | 450.00 | 315.00 |
| 12/04/2015 | GF | Review client documents [.7]; Telephone interview with potential client Stephanie Munoz [1.0]; Conference with Mr. Pruitt regarding potential client [.6]; Continue to prepare individual and collective spreadsheets of damage calculations [2.3] | 4.60 | 175.00 | 805.00 |
| 12/07/2015 | MRP | Follow up on status of communication efforts with each named plaintiff for information regarding amount of overtime claims [.1]; Conference with Greg Fairbanks regarding Stephanie Munoz joinder in case [.2] | 0.30 | 450.00 | 135.00 |
| 12/07/2015 | GF | Prepare fee agreement and consent form for Stephanie Munoz and e-mail [.4]; Conference with Mr. Pruitt regarding Stephanie Munoz [0.2]; Review client documents [0.8]; | 4.50 | 175.00 | 787.50 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | Continue preparation of detailed spreadsheets of damage calculations [3.1] |  |  |  |
| 12/08/2015 | MRP | Prepare letter to Kerri Orndoff [.3]; Receipt and analyze personnel and payroll records from GoDaddy for Mandi Collins [.3] | 0.60 | 450.00 | 270.00 |
| 12/08/2015 | GF | Continue damage calculations and assessment | 0.50 | 175.00 | 87.50 |
| 12/08/2015 | NJH | Review and analysis of additional records and documents submitted by plaintiffs | 2.40 | 295.00 | 708.00 |
| 12/09/2015 | GF | Receipt and review additional documents from new Plaintiffs | 0.40 | 175.00 | 70.00 |
| 12/10/2015 | MRP | Receipt and analyze email from Sal Careaga dated December 9, 2015 and attached Form W-2's | 0.20 | 450.00 | 90.00 |
| 12/10/2015 | GF | Prepare Plaintiffs' Initial Disclosure Statement | 4.00 | 175.00 | 700.00 |
| 12/11/2015 | NJH | Analysis and refinement of individual and combined overtime calculations and damages estimates | 2.30 | 295.00 | 678.50 |
| 12/12/2015 | GF | Draft witness section of Plaintiffs' Initial Disclosure | 0.90 | 175.00 | 157.50 |
| 12/14/2015 | MRP | Conference with Greg Fairbanks regarding initial disclosure statement [.2]; Receipt and analyze revisions to Case Management Report from Defendant's counsel [.4] | 0.60 | 450.00 | 270.00 |
| 12/14/2015 | NJH | Continue to prepare detailed summaries of overtime estimates for each Plaintiff [3.8]; review and analysis of case management report and revisions [.5] | 4.30 | 295.00 | 1,268.50 |
| 12/14/2015 | GF | Draft exhibit section of Plaintiffs' Initial Disclosure [2.5]; Conference with Mr. Pruitt regarding Initial Disclosure Statement [.2]; Review notes from Mr. Hill regarding client interviews and damages [.8]; Further review of documents from Plaintiffs to determine inclusion in initial disclosure including relevance and privilege [1.5] | 5.00 | 175.00 | 875.00 |
| 12/15/2015 | MRP | Conferences with Greg Fairbanks regarding initial disclosures and Case Management Report [.3]; Receipt and | 3.40 | 450.00 | 1,530.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | analyze email from Ben Naylor dated December 15, 2015 [.1]; Revise and edit Case Management Report [.4]; Receipt and analyze email from Ben Naylor dated December 15, 2015 [.1]; Receipt and analyze additional emails from Ben Naylor dated December 15, 2015 [.2]; Receipt and analyze Defendant's Notice of Service of Initial Disclosure Statement [.1]; Prepare and finalize Plaintiffs' Rule 26(a)(1) Initial Disclosure Statement [1.4]; Receipt and analyze Defendant's Rule 26(a)(1) Disclosure Statement [.2]; Analyze information from Sal Careaga and conference with Greg Fairbanks regarding same [.5]; Receipt and analyze message from Sal Careaga [.1] | | | |
| 12/15/2015 | NJH | Research FLSA overtime and regular effective rate calculations for spreadsheets [2.5]; review and analysis of Defendant's initial disclosure statement [.3]; Further review and comment on Defendant's Initial disclosure statement [1.7] | 4.50 | 295.00 | 1,327.50 |
| 12/15/2015 | GF | Conference with Sal Careaga regarding new information concerning GoDaddy [1.1]; Prepare documents for initial disclosure [1.2]; Conferences with Mr. Pruitt regarding Case Management Report and client web site [.5]; Interview with Kerri Orndoff [1.1]; Review documents from Kerri Orndoff [.3] | 4.20 | 175.00 | 735.00 |
| 12/17/2015 | MRP | Receipt and analyze minute order filed December 16, 2015 [.1]; Conference with Greg Fairbanks regarding status of determining damages [.1]; Receipt and analyze email from Sal Careaga dated December 16, 2015 [.1]; Conferences with Greg Fairbanks regarding analysis of new information [.4] | 0.70 | 450.00 | 315.00 |
| 12/17/2015 | GF | Conference with Mr. Pruitt regarding timing of filing notices for conditional certification [.4]; Research conditional certification and ability to contact potential class members [2.3]; Telephone interview with potential | 4.50 | 175.00 | 787.50 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | client Dustin Mitchell [1.0]; Telephone interview with Ian Schnack [.8] | | | |
| 12/18/2015 | MRP | Receipt and analyze email from Mandi Collins dated December 18, 2015 [.1]; Telephone call with Sal Careaga regarding settlement strategy [.5]; Conference with Greg Fairbanks regarding overtime calculations [.5]; Receipt and analyze Case Management Plan filed December 17, 2015 [.3] | 1.40 | 450.00 | 630.00 |
| 12/18/2015 | GF | Additional research of case law on fluctuating workweek defense [1.3]; Conferences with Mr. Pruitt regarding Case Management Order and damages [.4]; Review client documents [.3]; Prepare Notice of filing of Consent Forms and finalize documents for filing [.8] | 2.80 | 175.00 | 490.00 |
| 12/18/2015 | NJH | Continued research of FLSA damage calculation methods | 2.40 | 295.00 | 708.00 |
| 12/21/2015 | MRP | Receipt and analyze emails dated December 18, 2015 from Ian Schnack regarding overtime claim against GoDaddy [.2]; Receipt and analyze emails from Sal Careaga dated December 19, 2015 [.2] | 0.40 | 450.00 | 180.00 |
| 12/28/2015 | MRP | Receipt and analyze email dated December 22, 2015 from Sal Careaga with attachment [.2]; Receipt and analyze Defendant GoDaddy.Com, LLC's First Supplemental Disclosure Statement with attachments [1.0]; Receipt and analyze email and questions from Ian Schnack and prepare detailed  response [1.1]; Receipt and analyze email from Ian Schnack dated December 27, 2015 with attachments [.2]; Prepare Notice of Filing Written Consent to Join Form for Ian Schnack [.2] | 2.70 | 450.00 | 1,215.00 |
| 12/29/2015 | MRP | Receipt and analyze email from Ian Schnack dated December 28, 2015 [.1] | 0.10 | 450.00 | 45.00 |
| 01/06/2016 | GF | Telephone interview with Joshua Berry regarding calculation of damages [.5]; Voicemail to Dustin Mitchell responding to client e-mail regarding status [.2] | 0.70 | 175.00 | 122.50 |
| 01/06/2016 | MRP | Receipt and analyze email from Ben | 0.40 | 450.00 | 180.00 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | Naylor dated January 5, 2016 and prepare responsive email [.3]; Receipt and analyze additional email from Ben Naylor dated January 6, 2016 [.1] |  |  |  |
| 01/06/2016 | NJH | Analysis of emails from opposing counsel [.2]; review and update of damage calculations [.4] | 0.60 | 295.00 | 177.00 |
| 01/08/2016 | MRP | Conference with Greg Fairbanks regarding compilation of spreadsheet of damages and status [.3] | 0.30 | 450.00 | 135.00 |
| 01/08/2016 | GF | Telephone interview with Ian Kelman [.5]; Prepare and send fee agreement and consent to join form to Mr. Kelman [.3]; Conference with Mr. Pruitt regarding schedule and damage estimate [.1] | 0.90 | 175.00 | 157.50 |
| 01/11/2016 | MRP | Prepare Consent to Join Form for Ian Kelman | 0.20 | 450.00 | 90.00 |
| 01/11/2016 | GF | Telephone call with Amanda Collins [.2]; Arrange for filing of consent form and obtaining signed fee agreement for Ian Kelman [.3] | 0.50 | 175.00 | 87.50 |
| 01/13/2016 | GF | Generate spreadsheet of damages for additional Plaintiffs [4.0]; Research calculation of effective hourly rate for each Plaintiff [2.0] | 6.00 | 175.00 | 1,050.00 |
| 01/14/2016 | MRP | Conference with Greg Fairbanks regarding status and content of damage spreadsheets for each plaintiff [.4] | 0.40 | 450.00 | 180.00 |
| 01/14/2016 | GF | Continue to prepare individual and collective spreadsheets of damages [3.5]; Conference with Mr. Pruitt regarding damage calculations and conference calls with Plaintiffs [2.0]; Additional telephone calls regarding damage calculations with Dustin Mitchell [.3], Joshua Berry [.1], and Kerri Orndoff [.3] | 6.20 | 175.00 | 1,085.00 |
| 01/15/2016 | GF | Prepare for meeting with Mr. Pruitt regarding damages/overtime assessment [.8]; Meeting with Mr. Pruitt to review damage calculations, assumptions, and spreadsheets [.5];Research calculation of damages [.3]; Telephone calls Amanda Collins, Kerri Orndoff and Katherine Vega regarding damage calculation spreadsheets [.6] | 2.20 | 175.00 | 385.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| 01/15/2016 | MRP | Conference with Greg Fairbanks to review spreadsheets [.5]; Follow up with content of spreadsheets [.2]; Receipt and analyze email from Ben Naylor dated January 15, 2016 [.1]; Prepare detailed responsive email to Ben Naylor [.5] | 1.30 | 450.00 | 585.00 |
|---|---|---|---|---|---|
| 01/18/2016 | MRP | Conference with Greg Fairbanks regarding content of letter to GoDaddy's counsel and preparation for conference calls today with Plaintiffs [.3]; Prepare for and conduct conference call with Ron Pearl, Josh Ross, Mitchell Jenkins, Sal Careaga, Dustin Mtichell and Ian Kelman [1.5]; Conference with Greg Fairbanks regarding settlement letter [.1]; Telephone call with Sal Careaga regarding _____ [.3]; Conferences with Greg Fairbanks regarding content of letter to GoDaddy's counsel [.4]; Prepare for and conduct telephone conference with Katherine Vega, Kerri Baumann [Orndoff], Shelbie Garner, Christina Allen, Ian Schnack, Josh Berry and Amanda Collins regarding _____ [1.6] | 4.20 | 450.00 | 1,890.00 |
| 01/18/2016 | GF | Prepare documents and notes for client conference call [.5]; Conference with Mr. Pruitt to prepare for conference call with clients regarding settlement [.2]; Assist in arranging for client conference call [.5]; Conference call with Mr. Pruitt and six clients regarding _____ [1.2]; Meeting with Mr. Pruitt regarding settlement letter [.3]; Draft comprehensive demand letter to opposing counsel outlining settlement offer, liability, and damage calculations [3.0] | 5.70 | 175.00 | 997.50 |
| 01/19/2016 | MRP | Conference with Greg Fairbanks regarding content of settlement demand letter to GoDaddy's legal counsel [.1]; Prepare and edit lengthy letter to GoDaddy's legal counsel [1.2] | 1.30 | 450.00 | 585.00 |
| 01/19/2016 | GF | Continue drafting letter to opposing counsel regarding settlement offer and | 1.80 | 175.00 | 315.00 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | damage calculations [1.5]; Update spreadsheet of damage calculations [.3]; |  |  |  |
| 01/20/2016 | MRP | Receipt and analyze email from Shelbie Garner dated Janaury 19, 2016 [.1]; Receipt and analyze emails from Sal Careaga dated January 18, 2016 with attachments [.3] | 0.40 | 450.00 | 180.00 |
| 01/20/2016 | GF | Review e-mail and documents from Mr. Careaga [.3]; Analyze and review disclosed document [1.5]; Assist in preparation of supplemental disclosure statement and associated documents [.5] | 2.30 | 175.00 | 402.50 |
| 01/20/2016 | GF | Draft First Supplemental Disclosure | 0.70 | 175.00 | 122.50 |
| 01/21/2016 | MRP | Receipt and analyze message from David Barton regarding face-to-face meeting [.1]; Telephone call with David Barton regarding same [.2] | 0.30 | 450.00 | 135.00 |
| 01/22/2016 | GF | Prepare documents and notes for meeting with Mr. Pruitt and opposing counsel [.8]; Two conferences with Mr. Pruitt regarding meet and confer with opposing counsel [.2] | 1.00 | 175.00 | 175.00 |
| 01/28/2016 | MRP | Prepare letter to Ben Naylor and David Barton regarding report concerning settlement negotiations [.2]; Receipt and analyze email from David Barton dated January 28, 2016 and prepare responsive email [.2]; Conference with Greg Fairbanks regarding preparation of report regarding settlement negotiations [.1] | 0.50 | 450.00 | 225.00 |
| 01/28/2016 | GF | Conference with Mr. Pruitt regarding Joint Report on Settlement Talks | 0.20 | 175.00 | 35.00 |
| 01/29/2016 | MRP | Conference with Greg Fairbanks regarding motion for conditional certification and report to court on settlement negotiations [.2]; Revise Join Report [.2]; Prepare email to David Barton and Ben Naylor [.2]; Receipt and analyze email from David Barton dated January 29, 2016 [.1]; Receipt and analyze email from Benjamin Naylor dated January 29, 2016 with revisions to Joint Report [.2]; Prepare responsive email to Benjamin Naylor regarding Joint | 1.10 | 450.00 | 495.00 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  | | | | |
|---|---|---|---|---|---|
|  |  | Report [.1]; Conference with Greg Fairbanks regarding motion for conditional certification [.1] | | | |
| 01/29/2016 | GF | Review upcoming deadlines [.1]; Two conferences with Mr. Pruitt regarding deadlines and Joint Report on Settlement Talks [.3]; Draft Joint Report on Settlement Talks [.7]; Telephone call with Mitchell Jenkins regarding status and settlement negotiations [.2]; Conference with Mr. Pruitt regarding letter to Plaintiffs with update on settlement talks [.1]; Finalize Report on Settlement Talks for filing [.2] | 1.60 | 175.00 | 280.00 |
| 02/01/2016 | GF | Draft outline of Motion for Conditional Certification [3.0]; Conference with Mr. Pruitt regarding settlement conference and deadlines [.2]; Detailed voicemail to Mr. Naylor regarding deadline for Motion for Conditional Certification and request to the Court to extend deadlines pending a settlement conference [.2] | 3.40 | 175.00 | 595.00 |
| 02/01/2016 | MRP | Telephone call with Ben Naylor and David Barton regarding settlement conference and timing | 0.50 | 450.00 | 225.00 |
| 02/03/2016 | MRP | Receipt and analyze email from Ben Naylor dated February 2, 2016 with attached proposed stipulation and order [.2]; Analysis of timing of filing motion for conditional certification and prepare responsive email to Ben Naylor [.4]; Receipt and analyze email from Ben Naylor dated February 3, 2016 [.1]; Revise and edit Stipulation and Order [.5]; Receipt and analyze email from Sal Careage dated February 3, 2016 [.1]; Receipt and analyze email from Ian Schnack dated February 3, 2016 [.1] | 1.40 | 450.00 | 630.00 |
| 02/03/2016 | GF | Update redline Stipulation regarding request for settlement conference and extending of deadline [.3]; Draft e-mail to clients regarding settlement conference [.3]; Telephone calls with Ms. Baldwin and Ms. Schnack regarding settlement conference [.5]; Two conferences with Mr. Pruitt | 1.40 | 175.00 | 245.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | regarding settlement conference and client update [.3] | | | |
| 02/04/2016 | MRP | Receipt and analyze email from Ben Naylor dated February 4, 2016 [.1]; Prepare email to Ben Naylor regarding settlement conference [.1]; Receipt and analyze email from Ben Naylor dated February 4, 2016 [.1] | 0.30 | 450.00 | 135.00 |
| 02/05/2016 | MRP | Receipt and analyze Order from Judge Snow filed February 5, 2016 [.1]; Prepare email to Ben Naylor and David Barton and prepare responsive email [.2]; Telephone call with Judge Duncan's assistant regarding available dates for settlement conference [.2]; Prepare email to David Barton and Ben Naylor [.2]; Receipt and analyze email from Ian Schnack dated February 5, 2016 [.1]; Receipt and analyze email from Ron Pearl dated February 5, 2015 [.1] | 0.90 | 450.00 | 405.00 |
| 02/09/2016 | GF | Draft Motion to Amend Complaint to add additional Plaintiffs [1.6]; Create redline of Second Amended Complaint [.4] | 2.00 | 175.00 | 350.00 |
| 02/09/2016 | MRP | Receipt and analyze Settlement Conference Order filed February 9, 2016 [.4]; Prepare letter to Plaintiffs regarding settlement conference [.3] | 0.70 | 450.00 | 315.00 |
| 02/10/2016 | MRP | Prepare letter to Plaintiffs regarding preparation for settlement conference | 1.50 | 450.00 | 675.00 |
| 02/10/2016 | GF | Analyze and review Settlement Conference Order, outline requirements, and arrange for docketing of deadlines | 0.90 | 175.00 | 157.50 |
| 02/11/2016 | MRP | Prepare Motion for Leave to File Second Amended Complaint [.3]; Prepare and edit Second Amended Complaint [.6]; Prepare and edit letter to Plaintiffs [.8] | 1.70 | 450.00 | 765.00 |
| 02/11/2016 | NJH | Review and comment on proposed second amended complaint [.5]; meeting with Mr. Fairbanks regarding procedural issues [.2] | 0.70 | 295.00 | 206.50 |
| 02/12/2016 | MRP | Receipt and analyze email from Ben Naylor dated February 12, 2016 [.1]; Receipt and analyze email from Katherine Vega dated February 12, | 0.20 | 450.00 | 90.00 |

## ITEMIZATION OF ATTORNEY'S FEES

2016 [.1]

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 02/12/2016 | NJH | Review and finalize motion to amend and second amended complaint | 0.50 | 295.00 | 147.50 |
| 02/16/2016 | MRP | Receipt and analyze Order granting Motion to Amend Complaint filed February 16, 2016 [.1]; Conference with Greg Fairbanks regarding content of settlement conference memorandum [.3] | 0.40 | 450.00 | 180.00 |
| 02/16/2016 | GF | Review Court Order regarding filing of Second Amended Complaint [01]; Finalize Second Amended Complaint for filing [.4]; Draft letter to opposing counsel regarding Court ordered exchange of settlement demand and response [.5]; Review requirements for Settlement Conference memorandum [.5];  Review prior settlement and demand documents [.5]; Draft outline of Settlement Conference memorandum [2.0]; Conference with Mr. Pruitt regarding contents and focus of Settlement Conference memorandum [.3]; Analyze and review Answer and Case Management Report regarding basis for good faith and other defenses [.5]; Research waiver of attorney client privilege and good faith defense [1.5] | 6.30 | 175.00 | 1,102.50 |
| 02/17/2016 | MRP | Prepare and edit letter to David Barton and Ben Naylor | 0.20 | 450.00 | 90.00 |
| 02/17/2016 | GF | Two conferences with Mr. Hill regarding Settlement Conference memorandum [.5]; Research impact of after acquired evidence of change in position classifications [1.0]; Edit letter to opposing counsel [.1]; Finalize letter and arrange for delivery to opposing counsel [.3]; Research waiver of attorney client privilege through asserting defense of reliance on advice of counsel [1.5]; Research good faith defense and willful conduct for liquidated damages and three-year statute of limitations [2.0] | 5.40 | 175.00 | 945.00 |
| 02/18/2016 | GF | Continue drafting legal argument for Settlement Conference memorandum | 4.30 | 175.00 | 752.50 |
| 02/19/2016 | GF | Review client fee agreements for | 0.20 | 175.00 | 35.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | Settlement Conference Memorandum | | | |
| 02/25/2016 | MRP | Receipt and analyze Defendant GoDaddy.Com LLC's Answer to Plaintiffs' Second Amended Complaint [.4] | 0.40 | 450.00 | 180.00 |
| 03/02/2016 | MRP | Receipt and analyze Order filed February 26, 2016 [.2] | 0.20 | 450.00 | 90.00 |
| 03/07/2016 | MRP | Receipt and analyze letter dated March 7, 2016 from Ben Naylor [.1]; Analyze status of settlement negotiations and upcoming settlement conference [.2]; Conference with Greg Fairbanks regarding Defendant's offer and strategy [.2] | 0.50 | 450.00 | 225.00 |
| 03/07/2016 | GF | Conference with Mr. Pruitt regarding settlement negotiations | 0.30 | 175.00 | 52.50 |
| 03/08/2016 | MRP | Prepare letter to Plaintiffs with update and preparation for settlement conference [1.0]; Review status of Settlement Conference Memorandum for Plaintiffs [.6] | 1.60 | 450.00 | 720.00 |
| 03/10/2016 | MRP | Conference with Greg Fairbanks regarding settlement conference memorandum | 0.10 | 450.00 | 45.00 |
| 03/14/2016 | GF | Prepare draft of Settlement conference memorandum | 5.20 | 175.00 | 910.00 |
| 03/16/2016 | GF | Continue drafting Settlement Conference Memorandum | 6.00 | 175.00 | 1,050.00 |
| 03/18/2016 | GF | Continue drafting of Settlement Conference Memorandum | 7.00 | 175.00 | 1,225.00 |
| 03/19/2016 | GF | Proof read, edit and finalize draft of the Settlement Conference Memorandum | 1.00 | 175.00 | 175.00 |
| 03/21/2016 | MRP | Conferences with Greg Fairbanks regarding settlement conference memorandum [.4]; Prepare, edit and finalize Plaintiffs' Settlement Conference Memorandum and incorporate exhibits [4.0]; Receipt and analyze Defendant's Settlement Conference Memorandum with exhibits [.8]; Conferences with Greg Fairbanks to address arguments and facts raised in Defendant's Settlement Conference Memorandum [.6] | 5.80 | 450.00 | 2,610.00 |
| 03/21/2016 | GF | Conference with Mr. Pruitt regarding issues for Settlement Conference | 8.00 | 175.00 | 1,400.00 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | Memorandum [.4]; Assist in arranging for delivery of Settlement Conference Memorandum [.3]; Draft additional language regarding liquidated damages and waiver of attorney-client privilege for affirmative defense of good faith due to reliance on advice of counsel [1.0]; Read and analyze Defendant's Settlement Conference Memorandum and exhibits [3.5]; Conference with Mr. Pruitt regarding Defendant's Settlement Conference Memorandum [.7]; Research creative professional exemption [1.5]; Compose and send e-mail to clients regarding Defendant's Settlement Conference memorandum [.3]; Telephone call and voicemail to Ms. Collins, Mr. Careaga and Mr. Jenkins [.3] |  |  |  |
| 03/21/2016 | GF | Research basis for award of attorneys' fees to prevailing Plaintiff | 1.50 | 175.00 | 262.50 |
| 03/22/2016 | MRP | Conferences with Greg Fairbanks to discuss Defendant's Settlement Conference Memorandum and prepare rebuttal for settlement conference [.5]; Prepare and edit Notice of Errata for Plaintiffs' Settlement Conference Memorandum [.4]; Conference with Greg Fairbanks to prepare for conferences with Plaintiffs tomorrow and upcoming settlement conference [.7] | 1.60 | 450.00 | 720.00 |
| 03/22/2016 | GF | Conference with Mr. Pruitt regarding Settlement Conference [.4]; Detailed analysis of disclosed documents related to good faith and applicability of creative professional exemption [3.0]; Prepare notes of factual background [2.0]; Telephone calls with Mitchell Jenkins and Amanda Collins to discuss factual background [.5]; Draft Notice of Errata for Settlement Conference Memorandum [.8]; Conference with Mr. Pruitt regarding document review, upcoming client meeting and good faith defense [.7]; Research creative professional exemption [1.0] | 8.40 | 175.00 | 1,470.00 |
| 03/23/2016 | MRP | Conferences with Greg Fairbanks to | 4.40 | 450.00 | 1,980.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | prepare for telephone conferences with Plaintiffs [.3]; Telephone conference with Amanda Collins, Shelbie Garner, Mitchell Jenkins and Ian Kelman to prepare for Settlement Conference [1.3]; Follow up meetings with Greg Fairbanks regarding disclosure statement and preparation for Settlement Conference [.2]; Telephone call with Mitchell Jenkins regarding questions about settlement conference [.4]; Conference call with all other Plaintiffs regarding Settlement Conference [1.8]; Conference with Greg Fairbanks regarding preparation for Settlement Conference [.4] | | | |
| 03/23/2016 | GF | Analyze disclosed documents and generate notes and questions for Mr. Pruitt for teleconference with Plaintiffs [2.5]; Conference with Mr. Pruitt to prepare for client conferences [.3]; Telephonic conference with Mr. Pruitt and four Plaintiffs to prepare for Settlement Conference [1.3]; Telephonic conference with Mr. Pruitt and nine Plaintiffs to prepare for Settlement Conference [1.8]; Conference with Mr. Pruitt to discuss client meeting and results of research [.5]; Update research cases and factual criteria for granting or denying good faith defense to avoid liquidated damages [3.1] | 9.50 | 175.00 | 1,662.50 |
| 03/24/2016 | MRP | Prepare and edit Plaintiffs' First Supplemental Disclosure Statement [.7]; Prepare email to David Barton and Ben Naylor [.2]; Conferences with Greg Fairbanks regarding issues to research before Settlement Conference [.4] | 1.30 | 450.00 | 585.00 |
| 03/24/2016 | GF | Assist in preparation for Settlement Conference [.5]; Research criteria for award of reasonable attorneys' fees in contingency fee case [2.8]; Prepare First Supplemental Disclosure Statement [.3]; Prepare exhibits for disclosure [.5];  Prepare notes regarding documents and Plaintiffs' expected testimony [3.5]; Analyze and review detailed client e-mails | 10.00 | 175.00 | 1,750.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | regarding GoDaddy Settlement Conference Memorandum, duties and factual background [1.5]; Research background of Defendant's witnesses [.5]; Conference with Mr. Pruitt regarding Settlement Conference and results of research [.4] | | | |
| 03/25/2016 | GF | Update notes regarding evidence and documents for use in Settlement Conference [2.5]; Prepare for meeting with Mr. Pruitt to go over documents and evidence [.5]; Meeting with Mr. Pruitt to review notes, evidence and disclosed documents [1.1]; Research and generate written legal analysis for Creative Professional Exemption [3.0]; Research and locate cases related to good faith and willfulness [1.5]; Conference with Mr. Pruitt regarding research and preparation for Settlement Conference [.4] | 9.00 | 175.00 | 1,575.00 |
| 03/25/2016 | MRP | Meeting with Greg Fairbanks to review disclosure documents and arguments to prepare for Settlement Conference [1.1]; Telephone call with Katherine Vega to prepare for Settlement Conference [.8]; Additional conference with Greg Fairbanks to prepare for Settlement Conference [.6] | 2.5 | 450.00 | 1,125.00 |
| 03/26/2016 | GF | Update notes, research and exhibits for Settlement Conference | 2.00 | 175.00 | 350.00 |
| 03/26/2016 | MRP | Research caselaw cited in Defendant's Settlement Conference Memorandum [1.8]; Prepare for Settlement Conference [2.7] | 4.50 | 450.00 | 2,025.00 |
| 03/27/2016 | GF | Read and prepare response to e-mail from Mr. Pruitt regarding cases cited by Defendant in Settlement Conference Memorandum 0.2]; Update spreadsheet of damages [1.2] | 1.40 | 175.00 | 245.00 |
| 03/28/2016 | MRP | Prepare for and attend Settlement Conference before Judge Duncan in Phoenix | 9.50 | 450.00 | 4,275.00 |
| 03/28/2016 | GF | Prepare for Settlement Conference [.5]; Travel to Phoenix and attend Settlement Conference [9.5] | 10.00 | 175.00 | 1,750.00 |
| 03/29/2016 | MRP | Receipt and analyze Civil Minutes from Judge Duncan filed March 28, | 1.00 | 450.00 | 450.00 |

## ITEMIZATION OF ATTORNEY'S FEES

| | | | | | |
|---|---|---|---|---|---|
| | | 2016 [.1]; Receipt and analyze Transcript Order from Benjamin Naylor dated March 29, 2016 [.1]; Conference with Greg Fairbanks regarding content of Motion to Confirm Settlement Agreement and Affidavit of Attorneys' Fees [.2]; Prepare email to Tom Rogers regarding reasonable rates of experienced employment law attorneys and staff and possible declaration [.3]; Receipt and analyze email from Tom Rogers dated March 29, 2016 and prepare responsive email regarding declaration [.3] | | | |
| 03/29/2016 | GF | Update spreadsheets to define pro rata equitable distribution of settlement funds and analysis of recovery [4.0]; Research award of Attorneys' fees [2.5] | 6.50 | 175.00 | 1,137.50 |
| 03/30/2016 | GF | Draft affidavit of Mr. Pruitt [3.1] | 3.10 | 175.00 | 542.50 |
| 03/30/2016 | MRP | Receipt and analyze email from Ben Naylor dated March 31, 2016 and prepare responsive email [.2]; Exchange emails with Tom Rogers regarding his declaration [.2]; Prepare itemization of attorneys' fees and edit for exhibit to request for attorneys' fees [2.5] | 2.90 | 450.00 | 1,305.00 |
| 03/31/2016 | MRP | Receipt and analyze information from Thomas Rogers to include in his Declaration and format Declaration [.5]; Determine amount of attorneys' fees and costs claimed and distribution to each of the thirteen plaintiffs [1.0]; Prepare and edit Declaration of Michael Pruitt in support of attorneys' fees and costs [1.9]; Receipt and begin analysis of proposed Settlement Agreement and Release of Claims [.8]; Receipt and begin analysis of draft Joint Motion to Approve Settlement Agreement and Stipulation of Dismissal [.5] | 4.70 | 450.00 | 2,115.00 |
| 03/31/2016 | GF | Draft e-mail to opposing counsel with breakdown of Plaintiffs recovery and attorneys' fees [.2]; Continue drafting affidavit of Mr. Pruitt in support of Stipulation for Settlement [1.8]; | 4.90 | 175.00 | 857.50 |

## ITEMIZATION OF ATTORNEY'S FEES

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | Analyze and review Settlement Agreement and Motion [.5]; Update, proofread and edit the Affidavit of Mr. Pruitt in Support of Settlement [2.2]; E-mail draft of the Declaration of Mr. Pruitt to Mr. Rogers to review [.2] |  |  |  |
| 04/01/2016 | MRP | Telephone call with Ben Naylor regarding revisions to Settlement Agreement and Release of Claims [.2]; Receipt and analyze revised Settlement Agreement and Release of Claims from Ben Naylor [.2]; Receipt and analyze revised Settlement Agreement and Release of Claims [.2]; Finalize Declaration of Michael Pruitt and attached exhibits including Itemization of Attorneys' Fees [1.6]; Edit and revise Joint Motion to Approve Settlement Agreement and Stipulation for Dismissal [1.1] | 3.30 | 450.00 | 1,485.00 |
|  |  | **Grand Total:** | 486.10 |  | $119,514.50 |

**Caitlin Pruitt**

| | |
|---|---|
| **From:** | azddb_responses@azd.uscourts.gov |
| **Sent:** | Friday, July 10, 2015 11:10 AM |
| **To:** | azddb_nefs@azd.uscourts.gov |
| **Subject:** | Activity in Case 2:15-cv-01282-GMS Careaga et al v. Collins et al Complaint |
| | |
| **EventId:** | af754146-8531-44e6-a40b-dbad6da9aa48 |
| **MatterId:** | a83427ce-9e87-478c-a5a3-072c62d4d199 |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**DISTRICT OF ARIZONA**

**Notice of Electronic Filing**

The following transaction was entered on 7/10/2015 at 11:09 AM MST and filed on 7/10/2015
**Case Name:**      Careaga et al v. Collins et al
**Case Number:**     2:15-cv-01282-GMS
**Filer:**         Sal Careaga
            Amanda Collins
            Joshua Berry
**Document Number:** 1

**Docket Text:**
**COMPLAINT. Filing fee received: $ 400.00, receipt number 0970-11880489 filed by Sal Careaga, Amanda Collins, Joshua Berry. (Attachments: # (1) Exhibit, # (2) Civil Cover Sheet) (submitted by Michael Pruitt)(KMG)**

**2:15-cv-01282-GMS Notice has been electronically mailed to:**

Michael Rhodes Pruitt    mpruitt@jacksonwhitelaw.com, cpruitt@jacksonwhitelaw.com, dcarpenter@jacksonwhitelaw.com

Nathaniel James Hill    nhill@jacksonwhitelaw.com, cpruitt@jacksonwhitelaw.com, dcarpenter@jacksonwhitelaw.com

1

**2:15-cv-01282-GMS Notice will be sent by other means to those listed below if they are affected by this filing:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=7/10/2015] [FileNumber=13717765-0] [4f2f0e6d14d5a2a46f0b159469b27112035a2089c4627a049b5291db7ba10ff0b7703a5e325d63f2afca49a4d7d8f24b8c023099ac373f5ea7727a0223a9518e]]
**Document description:**Exhibit
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=7/10/2015] [FileNumber=13717765-1] [9cccf5ce065c9977ebd7adf71ef8cde55eeb63202dce2320ed788229afbcd209509051eb438124a496bbdc5337d91d2929ef26c954926ae5644255fa69ad0e34]]
**Document description:**Civil Cover Sheet
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1096393563 [Date=7/10/2015] [FileNumber=13717765-2] [027ca7aee0f4d3e71677213092b341421ea74c018a1e57b533ba1b4d83429bfc9168a20045e96ce79f9d0a329c9f667c9483fadc20eab0f5e21fd1c4d15c2487]]

In The United States District Court of The State of Arizona
and for the County of Maricopa

Sal Careaga, et al.

                                            Plaintiff,
VS.
GoDaddy.com, LLC

                                            Defendant,

**AFFIDAVIT OF SERVICE**

Case No: CV-15-01282-PHX-GMS

---

State of Arizona                } ss.
County of Maricopa          }

The Affiant, declares under penalty of perjury, that I am fully qualified, pursuant to Rule 4(d), Arizona Rules of Civil Procedure, to serve process in this cause in or for the State of Arizona and that the foregoing is true and correct.

On 11/3/2015, I received from Jackson White and from Michael R. Pruitt the Summons, First Amended Complaint, Demand for Jury Trial, Complaint, Civil Cover Sheet, Notice of Availability of a US Magistrate Judge to exercise Jurisdiction, Order, Notices of Filing Written Consent to Join Forms (3) and Notice of Filing First Amended Complaint as a Matter of Course.

On 11/3/2015, at 2:31 PM, I served the aforementioned documents on: GoDaddy.com, LLC, c/o Corporation Service Company, Statutory Agent at 2338 West Royal Palm Rd, Suite J, Phoenix, AZ 85021 in the manner set below:

By serving  true copies upon: GoDaddy.com, LLC, c/o Corporation Service Company, Statutory Agent, upon Nicole Beach - Clerk, who stated he/she is authorized to accept service and did accept service on their behalf.

Marriage Status: N / A

Military Status: N / A

Additional Comments:



X _____
Tim Leidigh, MC-8435, Affiant
Registered in Maricopa
Work Order Number: P122803
Client Reference: **28362.001**

Subscribed and sworn before me on
11/3/2015

_____
Daniel J. Eagy, Notary Public
Commission expires on: 2/20/2019

| | | |
|---|---|---|
| Service of Process - Rush | | 100.00 |
| Total: | | **$ 100.00** |



DANIEL J. EAGY
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
February 20, 2019

---

ON THE RUN LEGAL SOLUTIONS ● 29 W. Thomas Road, STE 103 ● Phoenix, AZ 85013 ● (602) 266-0456     Page 1

# EXHIBIT C

# JACKSONWHITE
### ATTORNEYS AT LAW
*A Professional Corporation*
40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:       (480) 464-1111
Facsimile No.:       (480) 464-5692
Email:       centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:    Michael R. Pruitt, SBN 011792
        Email:       mpruitt@jacksonwhitelaw.com
        Nathaniel J. Hill, SBN 028151
        Email:       nhill@jacksonwhitelaw.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sal Careaga, et al.; | No. CV-15-01282-PHX-GMS |
| Plaintiffs | **DECLARATION OF THOMAS ROGERS IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND COSTS** |
| vs. | |
| GoDaddy.com, L.L.C.; | |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746, I, Thomas Rogers, declare under penalty of perjury:

1.    I am an attorney licensed to practice law in the State of Arizona, and I make this declaration of my own knowledge.

2.    I received my undergraduate degree and law degree (*cum laude*) from George Washington University.  I was first admitted to practice in the State of Arizona and in the Commonwealth of Virginia in 1973.  I am also admitted to the bar of the United States District Court for the District of Arizona, the Ninth Circuit Court of Appeals and the United States Supreme Court.

3.    I have been engaged in the practice of law since 1973.  Presently, I am a member of the law firm of Robaina & Kresin, PLLC.  My practice focuses on employment law and litigation.  Approximately 90% of my work is employment law.

The focus of my legal work has been employment law since 1975, starting with my representation of state and county agencies, including the Arizona Supreme Court, before the state and federal courts of Arizona, and before the Ninth Circuit Court of Appeals and U.S. Supreme Court while an Assistant Attorney General for the State of Arizona.   In addition, I participated in hundreds of merit system proceedings representing state and county agencies.  From 1984 to 1985, I was the General Counsel of the Arizona Agricultural Employment Relations Board.  I am the Editor in Chief and Co-Author of the ARIZONA EMPLOYMENT LAW HANDBOOK, and a Co-Author of the ARIZONA APPELLATE HANDBOOK, specifically its chapter on the Arizona State Personnel Board.  I have served as Chairman of the State Bar's Employment/Labor Law Section.  I am a member of the American Bar Association's Labor and Employment Law Section, the Arizona Association of Defense counsel, and the Arizona and National Employment Lawyers Associations.  I have presented dozens of seminar programs in labor and employment law matters for the State Bar of Arizona, the U.S. Department of Labor, the Nevada State Bar, the College of Public Programs at Arizona State University (including administrative malpractice and liability under state and federal civil rights laws) and for numerous private organizations.

4. Since 1996, I have been AV rated with Martindale-Hubbell.  I have been recognized by "Southwest Super Lawyers" for having attained a high degree of peer recognition and professional achievement, I am a Fellow of The College of Labor and Employment Lawyers, and I have been recognized by "Best Lawyers in America" and "Arizona's Finest Lawyers."

5. In connection with my practice in Arizona, I have become acquainted with the billing rates of attorneys with various levels of experience practicing employment/civil rights law in Maricopa County, Arizona, as part of my co-authorship of the Federal Discrimination Law Attorneys Fees Article (7.3.11) in the ARIZONA EMPLOYMENT LAW HANDBOOK.

6.     Based on my experience and knowledge of the Plaintiff's employment bar in Arizona, there are few attorneys who are willing to represent employees in FLSA collective actions.  This is primarily due to the fact that these cases are both factually and legally complex and often vigorously defended.  Litigation frequently is long and protracted.  Most small firms or sole practitioners are simply not in a position to take on collective action litigation with the prospect that litigation will be long and the collection of attorneys' fees are both uncertain and distant.

7.     I have read the affidavit of Michael R. Pruitt in support of the request for an award of attorneys' fees.  I know of Mr. Pruitt's experience and expertise and that of his firm, Jackson White PC, in handling litigation in federal court cases and, in particular, in collective action wage and hour cases.

8.     I am familiar with the billing rates for attorneys with a high degree of experience and skill in discrimination/civil rights litigation against public and private sector employers.  Billing rates for experienced practitioners of Mr. Pruitt's experience and expertise in the metropolitan/Phoenix area range from about $350.00 to over $525.00 per hour.

9.     My normal hourly rate for litigation is $400 per hour.  In my opinion, Mr. Pruitt's request for a lodestar cross-check using a billing rate of $450 per hour for himself, $295 per hour for an experienced associate attorney, and $175 per hour for a paralegal in his firm is an eminently reasonable rate in the Phoenix-Metropolitan area for his services and the services of the attorneys in his firm that I understand were provided in this case.

Executed on April 1, 2016.

_____
THOMAS M. ROGERS